PEOPLE v. LOCHNER.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

1. INDICTMENT—VIOLATION OF LABOR LAW—SUFFICIENCY.

An indictment charging defendant with permitting his employé to work more than 60 hours a week, in violation of Laws 1897, c. 415, art. 8, § 110, providing that no employé shall be required or permitted to work in a bakery more than 60 hours a week, or more than 10 hours in any one day, unless for the purpose of making a shorter workday on the last day of the week, which follows the language of the statute, and which contains proper averments as to time, place, person, and other circumstances to identify the particular transaction, is good.

2. LABOR LAW—BAKERIES—HOURS OF LABOR—VALIDITY.

Laws 1897, c. 415, art. 8, § 110, providing that no employé shall be required or permitted to work in a bakery more than 60 hours a week, or more than 10 hours in any one day, unless for the purpose of making a shorter workday on the last day of the week, is a police regulation for the protection of the health of the employés in bakeries, as well as the health of the public, without prohibiting defendant from carrying on his business; and it is therefore not in conflict with Const. U. S. art. 14, § 1, providing that no state shall make any law abridging the privileges and immunities of the citizens of the United States.

3. SAME.

The statute is not in conflict with Const. U. S. art. 14, § 1, providing that no state shall deny any person within its jurisdiction the equal protection of the law.

4. SAME.

The statute is not in conflict with Const. art. 1, providing that no member of this state shall be deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers, nor be deprived of life, liberty, or property without due process of law.

McLennan and Williams, JJ., dissenting.

Appeal from trial term, Oneida county.

Joseph Lochner was convicted of permitting an employé working for him in his bakery to work more than 60 hours in one week, and appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

William S. Mackie, for appellant.
Timothy Curtin, for respondent.

DAVY, J.   The defendant was indicted by the grand jury of
Oneida county for a violation of chapter 415 of the Laws of 1897
(section 110), entitled "An act in relation to labor." The indict-
ment, in substance, charges that the defendant on the 21st day of
December, 1899, committed the crime of misdemeanor, second of-
fense, to wit, with having violated article 8, § 110, c. 415, of the
Laws of 1897, known as the "Labor Laws of the State of New
York," in permitting an employé working for him in his bakery to
work more than 60 hours in one week.

Section 110 of said act provides that:

"No employee shall be required or permitted to work in a biscuit, bread
or cake bakery or confectionery establishment more than sixty hours in
any one week or more than ten hours in any one day, unless for the purpose
of making a shorter work day on the last day of the week; nor more hours
in any one week than will make an average of ten hours per day for the
number of days during such week in which such employee shall work."

The defendant demurred to the indictment on the ground that
more than one crime is charged in the indictment, within the mean-
ing of sections 276 and 279 of the Code of Criminal Procedure,
and that the facts stated in the indictment do not constitute a crime.
The demurrer was overruled, and the defendant, when arraigned,
was tried and convicted of misdemeanor, second offense, and was
sentenced to pay a fine of $50, and to stand committed until paid,
not exceeding 50 days, in the Oneida county jail.   The appeal from
the judgment of conviction brings up for review the order over-
ruling the demurrer.

The indictment follows the language of the statute, and the
rule is well settled that an indictment for a statutory misdemeanor,
which charges the facts constituting the crime in the words of the
statute, and contains averments as to time, place, and person, and
other circumstances to identify the particular transaction, is good.
People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452;
People v. King, 110 N. Y. 422, 18 N. E. 245, 1 L. R. A. 293, 6 Am.
St. Rep. 389; People v. Welden, 111 N. Y. 574, 19 N. E. 279.

The learned counsel for the appellant has devoted his argument
principally to a discussion of the constitutionality of the act, and
he contends that the statute is an unlawful invasion of the liberty
of the defendant, because it unnecessarily prohibits him from con-
tracting with others to carry on his business; that it is in violation
of article 14, § 1, of the constitution of the United States, which
provides that no state shall make or enforce any law which shall
abridge the privileges or immunities of the citizens of the United
States, nor deny any person within its jurisdiction the equal pro-
tection of the law, and that it is also a violation of the following
provisions of article 1 of the constitution of the state of New York,
viz.:

"No member of this state shall be disfranchised or deprived of any of the
rights or privileges secured to any citizen thereof, unless by the law of the
land or the judgment of his peers," and "no person shall be deprived of life,
liberty or property without due process of law."

The statute authorizes the employment of men to labor in biscuit,
bread, or cake bakeries, or confectionery establishments, not more

than 60 hours in any one week, or more than 10 hours in any one day. This section of the statute merely declares that 10 hours' labor performed within 24 hours shall constitute a day's work, and no employé shall be required or permitted to work a greater number of hours for such employer. The constitutionality of this act must be determined by the citizen's right to pursue a lawful employment. If the restriction is arbitrary, and does not pertain to the welfare and health of the people, it cannot be upheld. It has been frequently held that it is only when a case is presented which shows clearly that a statute, when fairly and reasonably construed, is brought in conflict with some provision of the constitution, the court is justified in pronouncing the law invalid (Cooley, Const. Lim. 164), and that the courts cannot inquire whether the legislative enactments are unwise or expedient. A state, in the exercise of its constitutional power, may regulate the conduct of its citizens toward each other, and, when necessary for the public good, the manner in which each shall use his property. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; People v. Budd, 117 N. Y. 14, 22 N. E. 670, 5 L. R. A. 559, 15 Am. St. Rep. 460. So in the examination of this case we start with the rule of law well settled that nothing but a clear usurpation of power prohibited by the constitution will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void.

Sections 111 to 115 of the act in question aim to prescribe the sanitary conditions necessary to be maintained in order to properly conduct a bakery, and to protect the health of the community, and the health of those engaged in business of that nature. The act provides that:

"All buildings or rooms occupied as biscuit, bread, pie or cake bakeries shall be drained and plumbed in a manner conducive to the proper and healthful condition thereof, and shall be constructed with air shafts, windows or ventilating pipes, sufficient to insure ventilation. The factory inspector may direct the proper drainage, plumbing and ventilation of such rooms or buildings. No cellar or basement, not now used for a bakery, shall hereafter be so occupied or used, unless the proprietor shall comply with the sanitary provisions of said act."

It also provides that:

"Every room used for the manufacture of flour or meal food products shall be at least eight feet in height, and shall have, if deemed necessary by the factory inspector, an impermeable floor constructed of cement, or of tiles laid in cement, or an additional flooring of wood properly saturated with linseed oil. The side walls of such rooms shall be plastered or wainscoated. The factory inspector may require the side walls and ceiling to be whitewashed at least once in three months. He may also require the wood work of such walls to be painted. The furniture and utensils shall be so arranged as to be readily cleansed and not prevent the proper cleaning of any part of a room. The manufactured flour or meal food shall be kept in dry and airy rooms so arranged that the floors, shelves and all other facilities for storing the same can be properly cleaned. Every such bakery shall be provided with a proper washroom and water-closet or water-closets apart from the bake-room, or rooms where the manufacture of such food product is conducted, and no water-closet, earth-closet, privy or ash-pit shall be within or connected directly with the bake-room of any bakery, hotel or public bake-room. Sleeping places for the persons employed in the bakery shall be separate from the rooms where flour or meal food products are

manufactured or stored. If the sleeping places are on the same floor where such products are manufactured, stored or sold, the factory inspector may inspect and order them put in a proper sanitary condition."

Subdivision 3 of section 384*l* of the Penal Code provides:

"Any person who violates or does not comply with the provisions of article eight of the labor law, relating to bakeries and confectionery establishments, and employment of labor and the manufacture of flour or meal food products therein, * * * is guilty of a misdemeanor, and upon conviction shall be punished for a first offense by a fine of not less than twenty nor more than one hundred dollars; for a second offense by a fine of not less than fifty nor more than two hundred dollars, or by imprisonment for not more than thirty days, or by both such fine and imprisonment, for a third offense by a fine of not less than two hundred and fifty dollars, or by imprisonment for not more than sixty days, or by both such fine and imprisonment."

This brings us to the main question in the case, namely, the nature and extent of the police power of the state. There is little, if anything, to be said, other than what the courts have already said on this subject. It was remarked by Judge Gray in People v. Ewer, 141 N. Y. 132, 36 N. E. 4, 25 L. R. A. 794, 38 Am. St. Rep. 788, "that it is difficult, if not impossible, to define the police power of a state, or, under recent judicial decisions, to say where the constitutional boundaries limiting its exercise are to be fixed." The police power of the state is the power which enables it to promote the health, comfort, safety, and welfare of society. It is very broad and far-reaching, but it is not without its limitations. The rule seems to be well settled that, when one devotes his property to a use or carries on a business in which the public has an interest, he holds the property and carries on the business subject to the police power of the state to regulate or control its use so as to protect and preserve the public health, the public morals, and the general safety and welfare of the public. Bertholf v. O'Reilly, 74 N. Y. 515, 30 Am. Rep. 323. The line between a valid exercise of the police power and the invasion of private rights is clearly drawn by Judge Earl in his opinion in Re Jacobs, 98 N. Y. 110, 50 Am. Rep. 636. He says:

"Generally it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety; and while its measures are calculated, intended, convenient, and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the courts. But they must have some relation to these ends. Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final or conclusive. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act, and see whether it really relates to, and is convenient and appropriate to promote, the public health."

It was remarked by Judge O'Brien in People v. Rosenberg, 138 N. Y. 415, 34 N. E. 285, that:

"If the act and the constitution can be construed so as to enable both to stand, and each can be given a proper and legitimate office to perform, it is the duty of the court to adopt such legislation. The legislature, under the police power, may certainly regulate or even prohibit the carrying on of any business in such manner and in such place as to become dangerous or detrimental to the health, morals, or good order of the community."

Judge Vann, in discussing the statute entitled "An act to regulate barbering on Sunday," in People v. Havnor, 149 N. Y. 204, 43 N. E. 541, 31. L. R. A. 689, 52 Am. St. Rep. 707, says:

"As barbers generally work more hours each day than most men, the legislature may well have concluded that legislation was necessary for the protection of their health."

And at page 203, 149 N. Y., and page 544, 43 N. E., 31 L. R. A. 689, 52 Am. St. Rep. 707, he says:

"It is to the interest of the state to have strong, robust, healthy citizens, capable of self-support, of bearing arms, and of adding to the resources of the country. Laws to effect this purpose, by protecting the citizen from over-work, and requiring a general day of rest to restore his strength and preserve his health, have an obvious connection with the public welfare."

It was held in People v. Warden of City Prison, 144 N. Y. 536, 39 N. E. 686, 27 L. R. A. 718, that:

"The restraint of personal action is justified, when it manifestly tends to the protection of the health and comfort of the community, and no constitutional guaranty is then violated."

In Health Department of City of New York v. Rector of Trinity Church, 145 N. Y. 32, 39 N. E. 833, 45 Am. St. Rep. 579, the court laid down the rule that the legislature, in the exercise of its power to conserve the public health, safety, and welfare, may direct that certain improvements or alterations shall be made in tenant houses at the owners' expense, and that suitable appliances be supplied to receive and distribute a supply of water for domestic use. Judge Peckham, in discussing the constitutionality of the act (page 43, 145 N. Y., and page 836, 39 N. E., 45 Am. St. Rep. 579), says:

"Laws and regulations of a police nature, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner."

Under the police power, persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort and health of the public.

It has been held that the legislature might prohibit railroads from permitting or requiring workmen who have worked 24 hours to go on duty again until they have had 8 hours' rest. The same act also provides that 10 hours' work out of 12 consecutive hours shall constitute a day's labor. People v. Phyfe, 136 N. Y. 554, 23 N. E. 978, 19 L. R. A. 941.

The state, under its police power, may require every locomotive engineer to pass an examination before a board of examiners as to his skill in operating a locomotive engine, and his general competency as an engineer, and also inquire into his character and habits, and to withhold the license if he be found to be reckless or intemperate. It may also enact that every railroad corporation shall not permit any locomotive engineer in its employ to run a locomotive engine more than 10 consecutive hours in any one day. It may provide, when a locomotive engineer is found to be in a state of intoxication, that the board be authorized to revoke and cancel his license, and likewise whenever they shall be satisfied of the unfitness

of the engineer. Such legislation would be clearly within the scope and power of the legislature, to protect the lives of passengers and property.

In Tied. Lim. Police Power, 181, the author states:

"If the law did not interfere, the feverish, intense desire to acquire wealth, inciting a relentless rivalry and competition, would ultimately prevent, not only the wage earner, but likewise the capitalists and employers themselves, from yielding to the warnings of nature, and obeying the instinct of self-preservation by resting periodically from labor."

The Utah statute which limited the hours for labor in all underground mines and smelting works, except in cases of emergency, when life and property were in imminent danger, to eight hours, was held to be constitutional by the Utah courts, as well as by the supreme court of the United States; the latter taking the position that the state had a right to limit the hours for labor to those engaged in dangerous or unhealthy employments. Holden v. Hardy, 169 U. S. 361, 18 Sup. Ct. 383, 42 L. Ed. 780.

Another common form of statutory regulation of the hours of labor is the provision that workmen on public works shall not be required to work more than a prescribed number of hours each day. There, the regulation is applied to employés of the city, county, or state government, who are employed and were paid directly by these respective governments. The safety and health of a large body of workmen gathered together in one place—a mine, a factory, or workshop—are endangered if proper precautions are not taken by the employer against the source of danger; and everywhere we find the statutes both varied and numerous which require employers, and the owners of buildings which are used as workshops, and the owners of mines, to do certain things which are declared by statute to be necessary for the protection of the workmen. Inspectors are generally appointed to see that suitable regulations are observed. These regulations, in the main, are all reasonable safeguards, and their constitutionality has been rarely questioned. Many other cases pertaining to this subject might be cited which confirm the principles we have stated.

If the statute under consideration invades the right of property and the liberty of the individual, then many of the statutes of this state that have been held to be constitutional, and their enactment within the police power of the state, are subject to the same criticism. The statute in question does not restrict the right of the defendant to carry on his business, or to engage as many persons as he sees fit in such business, but it simply prohibits him from requiring or compelling his employés to work more than 10 hours in any one day, or more than 60 hours in any one week. In other words, the statute does not prohibit any right, but regulates it; and there is a wide difference between regulation and prohibition,—between prescribing the terms by which the right may be enjoyed, and the denial of that right altogether. The defendant is not deprived of any right or privilege which is not denied to others in a similar business. The provisions of the statute in question are directed to all persons engaged in the bakery business. It neither

confers special privileges, nor makes unjust discrimination. All who are engaged in that business are entitled to its benefits and subjected to its restrictions. It is open to any citizen to engage in that business, and the privileges conferred belong equally to all. It is very important for the health of the community that bakers should supply people with wholesome bread and pure food. The people are interested in the business. It is of so much public interest that the legislature, under the police power of the state, may control the business by any regulation which is necessary to secure the public health. The regulations instituted by this statute were for the purpose of protecting the health of the employés, and giving the public pure and wholesome bread and other articles of food sold by bakers. These establishments are compelled to do baking during the nighttime, in order to supply their customers in the morning. It is necessary for them to have their ovens heated day and night, and their employés are required to work more hours each day than men usually work who are engaged in other kinds of business. When we consider the intense heat of the rooms where baking is done, and the flour that floats in the air and is breathed by those who work in bakeries, there can be but little doubt that prolonged labor, day and night, subject to these conditions, might produce a diseased condition of the human system, so that the employés would not be capable of doing their work well, and supplying the public with wholesome food. The legislature, no doubt, recognized the fact that proprietors of these establishments desire to obtain as much labor as possible from their employés, who, from fear of being discharged, are often induced to comply with the employer's request to work during both night and day; and the legislature evidently reached the conclusion that more than 10 hours' labor each day might be injurious to the health of the employés. The rule laid down in People v. Havnor, supra, shows that the courts are disposed to uphold a statutory regulation enacted for the safety of the public, and to protect the health of the individual employés from the dangers threatened by excessive or exhaustive labor.

We are of the opinion that the act is constitutional, and that the judgment of conviction is right, and should be affirmed. All concur, except McLENNAN and WILLIAMS, JJ., who dissent.