O’NIELL, C. J.
 

 The appellant was convicted of violating Act No. 318 of 1926, p. 601, and sentenced to pay a fine of $305 and the costs of the prosecution, or, in default thereof, to be imprisoned in the parish jail for 30 days.
 

 The first section of the statute makes it unlawful for any person, firm, or corporation, whether acting for himself, or ithelf, or as the agent of any person, firm, or corporation, to issue any coupon, trade check, punchout ticket, token, or other device, to any laborer, in payment of his wages, and redeemable wholly or partly in merchandise at any place of business.
 

 The second section of the act makes it unlawful for any person, firm, or corporation, or the agent of any person, firm, or corporation, to pay any laborer in any other way than with current money of the United States or by cheek or draft on a bank, for work or services performed.
 

 The third section declares that any person, or any member of a firm or corporation, violating any of the provisions of the act shall be deemed guilty' of a misdemeanor and on conviction shall be fined not less than $100 or more than $500, or be imprisoned in the parish jail for a term not less than 10 days nor more than 30 days, or suffer both the fine and imprisonment, at the discretion of the judge;
 

 The fourth section, which is the concluding section of the act, repeals all laws or parts of laws in conflict therewith.
 

 
 *178
 
 The indictment charged that the defendant, J. I. Blake, while acting as the agent of the Louisiana Central Lumber Company, did unlawfully issue to one, W. H. Kandall, a laborer employed by said lumber company, a certain trade check and token, in payment of the laborer’s wages, and redeemable wholly or partly in merchandise at the commissary of the said lumber company, in the following words and figures, to wit:
 

 “No. 1181. Webb, Louisiana, 6/1/29.
 

 “Louisiana Central Lumber Company:
 

 “Please charge my account, for merchandise, Amount $10.00."
 

 “Signature: --
 

 “Not to exceed $10.00. Witness: J. I. B.
 

 “(Not good after date issued).”
 

 The defendant, before arraignment, filed a motion to quash the indictment, on the grounds: First, that it did not charge any offense; second, that Act No. 318 of 1926 was arbitrary, unjust, unreasonable and discriminatory, and violative of the Fourteenth Amendment of the Constitution of the United States, and the second section of article 1 of the Constitution of Louisiana, in that it undertook to deprive people of their liberty without due process of law, and unjustly to prohibit the individual’s liberty and freedom of contract, and to abridge and take away the inalienable rights and privileges and immunities of citizens of the UnitedIStates; and, third, that the statute was violative of the sixteenth section of article 3 of the Constitution of Louisiana, in that the statute had more than one object, and in that its title was not indicative of its object.
 

 The motion to quash the indictment was overruled; and, as the alleged offense whs defined only as a misdemeanor, the case was tried by the judge alone, without a jury, as provided in the ninth section of article 1 of the Constitution.
 

 When all of the evidence had been introduced, the attorneys for the defendant requested the judge to maintain, as principles of law, and as if charging a jury, certain legal propositions, the substance of' which were, first, that the defendant could not be convicted of a crime or misdemeanor for merely approving the merchandise order, which was signed by W. H. Randall himself, and, second, that the defendant could not be convicted when the evidence showed, as it did show, that Randall did not present the merchandise order at the commissary of the Louisiana Central Lumber Company but obtained merchandise on it at the store of another party, E. W. Radford, and when the evidence showed, as it did show, that Randall, therefore, received in cash from the Louisiana Central Lumber Company the full amount of his wages on the next pay day, without any charge or deduction being made on account of the merchandise order complained of. The judge refused to maintain these propositions of law, and ruled that the so-called “merchandise order” or “credit slip” was a “device,” within the meaning of the statute, and that it was a matter of no importance, in defense of the prosecution, that Randall signed the document and negotiated it by buying merchandise, amounting to $10, at the store of a competing merchant, E. W. Radford; and that it was also a matter of no importance that no part of the amount of the merchandise order was ever charged by the lumber company to Randall, who received the full amount of his wages in cash on the next pay day. The attorneys for the defendant reserved bills of exception to these rulings, as they had already done with reference to the overruling' of the motion to quash the indictment.
 

 
 *180
 
 In order to understand clearly the points made in the bills of exception, it is necessary to know the facts, which are related in the statements per curiam, and in the record of the testimony annexed to and forming part of the bills of exception, which facts are not disputed. The defendant, J. I. Blake, was the bookkeeper, credit man, and manager' of the commissary of the Louisiana Central Lumber Company, at Webb, La., where the company maintained a logging camp. W. H. Randall was employed by the lumber company as a laborer at the logging camp, his wages being $3 per day. The company had two regular pay days per month, two weeks apart, as nearly as practicable, as the Act No. 25 of 1914, p. 80, requires of all employers of ten or more persons, engaged in any manufacturing business; and, on every bimonthly pay day, the company paid every employee in cash the full amount of the wages due him. Between these pay days the company allowed its employees to buy goods at the company’s commissary, on credit slips, or merchandise orders, signed by thd employees and approved by Blake. The" so-called credit slips, or merchandise orders, were on printed forms, furnished by Blake, like the one which is copied in the indictment in this case. According to the custom, W. H. Randall, on the 1st of June, 1929, asked Blake for what Randall called a “trade cheek” for $10, saying that he needed that amount in groceries. Blake produced and dated the printed slip (which is copied in the indictment in this ease) and handed it to Randall, who signed it; and, thereafter, Blake wrote in the figures “10.00,” after the words “Not to exceed,” and signed with his initials, “J. I. B.,” after the word “Witness,” and returned the instrument to Randall. The la.tter intended, but did not express his intenuon, to negotiate the instrument by buying $10 worth of groceries from E. W. Radford, whose store was about a quarter of a mile from the commissary of the lumber company. Radford had notified the laborers employed by the lumber company that he would accept these merchandise orders, initialed by Blake, in payment for merchandise, and had taken in 85 of such orders, amounting to $695, at the time of the trial of this case; which orders the defendant, Blake, for the company, refused to redeem in cash. When Radford sold the merchandise to Randall, he, Radford, wrote in the figures “10.00,” after the word “Amount,” in the order which Randall- indorsed and delivered to Radford. It appears that Radford would have written in- only the amount of the purchase, after the word “Amount,” if it had been less than $10. ■ The custom of the lumber company, in honoring such orders, was for the clerk in the commissary to write in the amount of the purchase, after the word “Amount,” and to attach to the order the detailed sales slips. No record was kept of the orders issued by Blake, until they came into the office from the commissary. Then the amount of each sales slip, attached to the merchandise order, was charged to the purchaser whose signature appeared on the merchandise order. The order which this prosecution is based upon was never charged to Randall. He testified that he knew that there would be no charge made against him, on account of the order, unless he bought goods on it at the commissary of the lumber company. The amount of wages due to him when he signed the merchandise order was $35.50, which was paid to him in full on the next pay day. He testified that he observed then that the company had not - deducted the amount of the merchandise order which he had drawn on the 1st of June, but that, nevertheless, he
 
 *182
 
 did not pay the' amount to Radford. The latter testified that he did not demand payment of any of the men who had negotiated such merchandise orders with him, because he regarded the orders as the obligations of the lumber company.
 

 According to the statement of facts which we have given, which is, substantially, the statement per curiam, and which is admitted to he a true statement of the facts, the judge ruled correctly on the question of guilt or innocence of the defendant, if Act No. 318 of 1926 is a valid statute. The statute declares, without any reservation or exception whatever, that it is unlawful for any one, either for himself or as the agent of any person, firm, or corporation, to issue any. coupon, trade check, punchout ticket, token, or other device, to any laborer, in-payment of his wages and redeemable wholly or partly in merchandise at any place of business. The words, “trade check, * * * token, or other device,” are certainly comprehensive enough to include a “merchandise or-d.er,” such as was issued in this case. The fact that the order was signed by the laborer himself is not so important as is the fact that it was actually issued by the defendant, Blake, as the agent of the lumber company, after he had approved it with his initials, for the purpose of making it “redeemable wholly or partly in merchandise at the place of business” of the Louisiana Central Lumber Company. It- is argued by counsel for appellant that this merchandise order was not issued “in payment for wages,” because it was not charged against the laborer’s wages, or deducted from his wages on the next pay day; but a sufficient answer to the argument is that the reason why the amount of the order was not deducted from the laborer’s wages, is that he did not use it at the place of business where it was redeemable in merchandise. It was issued in payment of wages, notwithstanding it did not become a payment of wages. What the statute condemns is the issuing of such merchandise orders in payment of wages; and it seems certain that the statute, if valid, was violated when the defendant, as the agent of the Louisiana Central Lumber Company, refused to redeem this merchandise order in cash, or otherwise than in merchandise. In fact, if the statute is valid, any employer who accommodates a laborer by issuing a merchandise order on any store, in payment or part payment of the laborer’s wages, is guilty of a misdemeanor and subject to the penalty of a fine of $500 and imprisonment for 30 days. And, under the second section of the statute, if it is valid, the law would have been violated if the laborer, in this case, without an order, had bought goods at the commissary of his employer and if the price had been charged against his wages.
 

 The only question, therefore, is whether Act No. 318 of 1926 is unconstitutional. In that respect we shall consider first the most important question — whether the statute is violative of the Fourteenth Amendment of the Constitution of the United States. That depends upon whether the statute is a fair, reasonable and appropriate exercise of the police power of the state, as a matter of public welfare, or is an unreasonable, unnecessary, and arbitrary attempt to interfere with the individual in his personal liberty to enter into those contracts in relation to labor which he deems appropriate and which cannot be harmful to the public or unjust to any one. As Mr. Justice Peckham, for the court, said, in Lochner v. New York, 198 U. S. 56, 25 S. Ct. 539, 543, 49 L. Ed. 941, 3 Ann. Cas. 1133:
 

 “In every case that comes before this court, therefore, where legislation of this charac
 
 *184
 
 ter Is concerned, and where the'protection of the Federal Constitution is sought, the question necessarily arises: Is this a fair, reasonable, and appropriate exercise of the police power of the state, or is it an unreasonable, unnecessary, and arbitrary interference with the right of the individual to his personal liberty, or to enter into those contracts in relation to labor which may seem to him appropriate or necessary for the support of himself and his family? Of course the liberty of contract relating to labor includes both parties to it. The one has as much right to purchase as the other -to sell labor.
 

 “This is not a question of substituting the judgment of the court for that of the legislature. If the act be within the power of the state it is valid, although the judgment of the court might be totally opposed to the enactment of such a law. But the question would still remain: Is it within the police power of the state? and that question must be answered by the court.”
 

 No clear-cut definition or formula has been given, and perhaps none can be given, for determining when legislation of this character does and when it does not go beyond the state’s police power. The validity of the statute in each ease must be determined from the circumstances under which it was enacted, the necessity for such a law, and the benefit to be accomplished, or evil to be suppressed. As the court said in Allgeyer v. State of Louisiana, 165 U. S. 590, 17 S. Ct. 427, 431, 41 L. Ed. 836, after citing several cases as illustrations:
 

 “The foregoing extracts have been made for the purpose of showing what general definitions have been given in regard to the meaning of the word ‘liberty’ as used in the amendment, but we do not intend to hold that in no such case can the state exercise its police power. When and how far such power may be legitimately exercised with regard to these subjects must be left for determination to each case as it arises.”
 

 The first statute of this kind enacted by the Legislature of Louisiana was Act No. 71 of 1894, p. S3. The act made it a misdemeanor for any person, firm or corporation to issue tickets or checks redeemable only in merchandise at the issuer’s place of business, made all such tickets or checks redeemable in currency, and declared any and all agreements to the contrary null, as against public policy. That statute was declared unconstitutional, in State v. Ferguson, 104 La. 249, 28 So. 917, 81 Am. St. Rep. 123, on the ground that it had two separate and distinct objects and was, therefore, violative of article 29 of the Constitution of 1879, which had become article 31 of the Constitution of 1898, and which is, substantially, section 16 of article 3 of the Constitution of 1921. Having decided, for that reason, that the statute was unconstitutional, the court found it unnecessary to decide whether, if the statute were otherwise valid, it would be violative of the Fourteenth Amendment.
 

 The next statute on the subject was Act No. 228 of 1908, p. 345, which declared that all checks, punchouts, tickets, tokens, or other devices, made redeemable in merchandise at the issuer’s place of business or at any other place of business, should be collectable in cash on the next pay day of the issuer, or payable to bearer on demand, notwithstanding any stipulation to the contrary therein contained; and the statute authorized the holder of any such check, punchout, ticket, token or device, to sue for and recover from the issuer the face value thereof in money, with interest and 10 per cent, attorney’s fees. The statute did not make it unlawful to issue such merchandise orders, checks, ticket's, etc., but merely made them negotiable instruments, collectable in
 
 *186
 
 cash, and imposed the penalty of 10 per cent, attorney’s fee, not for the issuing of such an instrument, but for the refusal to pay if without a lawsuit. The statute was, substantially, the same as the Tennessee statute of March 17, 1899, which had been pronounced valid in Knoxville Iron Co. v. Harbison, 183 U. S. 13, 22 S. Ct. 1, 3, 46 L. Ed. 55 ; Avent-Beattyville Coal Co. v. Commonwealth, 96 Ky. 218, 28 S. W. 502, 28 L. R. A. 273. On the authority of that decision, this court pronounced Act No. 22S of 1908 valid, in Regan v. Tremont Lumber Co., 134 La. 199, 63 So. 874, and, on the same authority, the decision was affirmed, in a memorandum decision in Tremont Lumber Co. v. Reagan, 245 U. S. 625, 38 S. Ct. 10, 62 L. Ed. 517. We must look, therefore, to the opinion rendered in the Tennessee case, by Mr. Justice Shiras, to distinguish this case, if it is distinguishable, from the Tennessee case. And there we find that the reason why the Tennessee statute, like the Louisiana statute of 1908, did not interfere with the individual liberty or freedom to enter into contracts was that the statute did not prohibit the issuing of merchandise orders, etc., but merely made such instruments negotiable and redeemable in cash on certain specified and very reasonable conditions. The statement of the Tennessee case shows that the law was enácted to abolish a hardship which was being imposed upon laborers by their employers. The Knoxville Iron Company was engaged extensively in mining and selling coal, as well as in manufacturing iron, and always had on hand a large quantity of coal for sale in Knoxville, where there were regularly about 200 employees working for the company. The company had only one pay day in each month, being on the Saturday nearest the 20th of the month, and on those pay days paid only the wages earned previous to the first day of the month, so that the company was always in arrears, for the wages due to the employees, for about three weeks. Between pay days the company issued, on every Saturday, from 1 to 5 o’clock, to the laborers who asked for them, coal orders, viz.: “Let bearer have - bushels of coal, and charge to my account. [Signed] -. Accepted -, 1899. [Signed] Knoxville Iron Company.” The laborers, compelled by the necessities of-their situation, sold these coal orders to speculators, at a discount, for cash, in order to buy the necessaries of life. The prevailing price of such orders was 75 cents on the dollar before the statute was enacted, and rose to S5 cents on the dollar in consequence of the statute. Each order, when issued, was charged to the laborer who received it, at 12 cents per bushel of coal; and thus the company made its profit on the coal, and on the unfortunate condition of the laborer, whether he got the coal or sacrificed the order for something more necessary for his living until the next pay day. Under these circumstances, the court held that the Tennessee statute was valid, because it did not prohibit the issuing of such orders, but merely made them payable in cash to any bona fide holder who demanded the cash on the next pay day, and not sooner than 30 days after the issuance of the order. The court quoted extensively from the opinion rendered by the Tennessee court, and thereby showed very plainly •that, if the statute had undertaken to prohibit the issuing of such orders, under penalty of fine or imprisonment, the statute would have been unconstitutional, viz.:
 

 “There is no prohibition against the issuance of any of the obligations referred to, nor against payment in merchandise or otherwise according to their terms, but only a provision that they shall be paid in money at the election and upon a prescribed demand of the owner. In other words, the effect of the act
 
 *188
 
 is to convert into cash obligations such unpaid merchandise orders, etc., as may be presented for money payment on a regular pay day or as much as thirty days after issuance.
 

 “Under the act the present defendant may issue weekly orders for coal, as formerly, and may pay them in that commodity when desired by the holder, but instead of being able, as formerly, to compel the holder to accept payment of such orders in coal, the holder may, under the act, compel defendant to pay them in money. In this way and to this extent the defendant’s right of contract is affected.
 

 “Under the act, as formerly, every employee of the defendant may receive the whole or a part of his wages in coal orders, and may collect the orders in coal, or transfer them to someone else for other merchandise or for money. His condition is bettered by the act, in that it naturally enables him to get a better price for his coal orders than formerly, and thereby gives him more for his labor; and yet, although the defendant may not in that transaction realize the expected profit on the amount of coal called for in the orders, it in no event pays more in dollars and cents for the labor than the contract price.
 

 “The scope and purpose of the act are thus indicated. The legislature evidently deemed the laborer at some disadvantage under existing laws and customs, and by this act undertook to ameliorate his condition in some measure by enabling him or his bona fide transferee, at his election and at a proper time, to demand and receive his unpaid wages in money rather than in something less valuable. Its tendency, though slight it may be, is to place the employer and employee upon equal ground in the matter of' wages, and, so far as calculated to accomplish that end, it deserves commendation. * * *
 

 “The act before us is, perhaps, less stringent than any one considered in any of the cases mentioned. It is neither prohibitory nor penal; not special, but general; tending towards equality between employer and employee in the matter of wages; intended and well calculated to promote peace and good order, and to prevent strife, violence, and bloodshed. Such being the character, purpose, and tendency of the act, we have no hesitation in holding that it is valid,” etc.
 

 None of the reasons which were given for declaring the Tennessee statute a valid exercise of the state’s police power is applicable to the statute which we are now considering. It is prohibitory and penal. It does npt tend towards equality between employers and employees in the matter of wages, but arbitrarily forbids them to enter into a contract which may be desirable to both of them, and which could not be harmful to any one. This statute does not purport to, and cannot possibly, compel the employers to pay their laborers’ wages in cash between the regular pay days, which are fixed by law. On the contrary, the statute merely forbids an employer to pay any part of the wages due to an employee, even at the latter’s request, in anything but money, either on or between the regular bimonthly pay days. The statute does not even purport to make merchandise orders redeemable in cash on the regular pay days of the parties issuing such orders. We do not express an opinion as to the right of a bona fide holder of such a merchandise order to collect the amount of the order in cash, because the record discloses that a civil suit is pending in the district court, in which E. W. Radford is suing the Louisiana Central Lumber Company for payment in cash of the amount of the merchandise orders held by him.
 

 Our opinion is that this case is governed by the principle announced in Allgeyer v. State
 
 *190
 
 of Louisiana, supra, and in Lochner v. New York, supra. In the Allgeyer Case the court held that a statute of Louisiana which made it unlawful, under penalty of a fine not exceeding $1,000, for any person, firm or corporation to do any act to effect marine insurance on property in this state in any marine insurance company, which had not complied with the laws regulating the right to do business in the state, was violative of the Fourteenth Amendment. The alleged violation of the statute consisted in sending a telegram and mhiling a letter in Louisiana to a marine insurance company in New York, describing the property on which the insurance, under an open policy, should attach. The Supreme Court of the United States said:
 

 “The supreme court of Louisiana says that the act of writing within that state the letter of notification was an act therein done • to effect an insurance on property then in the state, in a marine insurance company which had not complied with its laws, and such act was therefore prohibited by the statute. As so construed, we think the statute is a violation of the Fourteenth Amendment of the federal constitution, in that it deprives the defendants of their liberty without due process of law. The statute which forbids such act does not become due process of law, because it is inconsistent with the provisions of the constitution of the Union. The ‘liberty’ mentioned in that amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to Be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; -to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for -that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful. conclusion the purposes above mentioned.”
 

 In Lochner’s Case, the statute which was declared unconstitutional made it unlawful to require an employee in a bakery or confectionery to work longer than sixty hours in one week or ten hours in one day. The court said:
 

 “The question whether this act is valid as a labor law, pure and simple, may be dismissed in a few words. There is no reasonable ground for interfering with -the liberty of person or the right of free contract, by determining tíre hours of labor, in the occupation of a baker.. There is no contention that bakers as a class are not equal in intelligence and capacity to men in other trades or manual occupations, or that they are not able to assert their rights and care for themselves without the protecting arm of the state, interfering with their independence of judgment and of action. They are in no sense wards of the state. Viewed in the light of a purely labor law, with no reference whatever to the question of health, we think 'that a law like the one before us involves neither the safety, the morals, nor- the welfare, of the public, and that the interest of the public is not in the slightest degree affected by such an act. * * *
 

 “It is a question, of which of -two powers or rights shall prevail, — the power of the state to legislate or the right of the individual to liberty of person and freedom of contract. The mere assertion that the subject relates, though but in a remote degree, to the public health, does not necessarily render the enactment valid. The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate, before an act can be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract in relation to his bwn labor. * * *
 

 
 *192
 
 “We think the limit of the police power has been reached and passed in this case. There is, in our judgment, no reasonable foundation for holding this to be necessary or appropriate as a health law to safeguard the public health or the health of the individuals who are following the trade of a baker. If this statute be valid, and if, therefore, a proper case is made out in which to deny the right of an individual, sui juris, as employer or employee, to make contracts for the labor of the latter under the protection of the provisions of the Federal Constitution, there would seem to be no length to which legislation of this nature might not go.”
 

 In State v. Loomis et al., 115 Mo. 307, 22 S. W. 350, 21 L. R. A. 789, the defendants were prosecuted for violating a statute of Missouri, sections 7058, 7060, of the Revised Statutes of 1889, which made it an offense, punishable by fine not less than $10 nor more than $500, for a person, firm or corporation, engaged in mining or manufacturing, to issue in payment of a laborer’s wages, any order, check, memorandum,' or evidence of indebtedness, payable in whole or in part otherwise than in lawful money of the United States; and the court held that the statute deprived the parties afc fected of their “liberty,” guaranteed by the Fourteenth Amendment.
 

 In State v. Haun, 61 Kan. 146, 59 P. 340, 341, 47 L. R. A. 369, the defendant was convicted of violating a statute of Kansas, chap. 145 of the Laws of 1897, making it a misdemeanor for any employer to issue to an employee, in payment of wages, any scrip, token, check, draft, or order, payable otherwise than in lawful money of the United States; and the court pronounced the statute invalid, saying:
 

 “The act is unconstitutional and void, in that it violates the fourteenth amendment to the constitution of the United States, which provides, ‘Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.’ ”
 

 In Jordan v. State, 51 Tex. Cr. R. 531, 103 S. W. 633, 11 L. R. A. (N. S.) 603, 14 Ann. Cas. 616, the defendant was convicted of violating a statute of Texas, making it unlawful for any employer to issue to his employee, in payment of labor performed, any ticket, check, or writing, redeemable or payable in goods or merchandise; and the Texas Court of Criminal Appeals declared the statute unconstitutional, saying:
 

 “A statute prohibiting the issuance by an employer to his employee of checks for labor performed, redeemable in goods and merchandise, interferes with the right of freedom of contract, and is not within the police power of the state.”
 

 We are not aware of any case where it has been held by any court that a statute, which makes it a crime or misdemeanor for an employer to issue to his employee, in payment of wages, an order or voucher payable in merchandise, is within the police power of the state and does not interfere with the constitutional right of-freedom of contract.
 

 Our conclusion is that Act No. 318 of 1926 is violative of the Fourteenth Amendment of the Constitution of the United States. It is not necessary, therefore, to decide whether the statute, if it were otherwise valid, would be violative of the sixteenth section of Article 3 of the Constitution of Louisiana, requiring a statute to have only one object and a title indicative of its object.
 

 The conviction and sentence are annulled and the defendant, appellant, is ordered discharged.
 

 THOMPSON, J., recused.