127 So.2d 309 (1961)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
SOUTHWESTERN ELECTRIC POWER COMPANY, Defendant-Appellee,
Shreveport Transit Company, Inc., Intervenor-Appellee.
No. 9387.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1961.
Rehearing Denied March 10, 1961.
Certiorari Granted April 24, 1961.
*310 D. Ross Banister, Philip K. Jones, George W. Lester, Thomas A. Warner, Jr., Baton Rouge, for appellant.
Wilkinson, Lewis, Madison & Woods, Shreveport, for defendant-appellee.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for intervenor-appellee.
Before HARDY, GLADNEY and AYERS, JJ.
HARDY, Judge.
This action, instituted by the Department of Highways of the State of Louisiana, a *311 corporation created under and by virtue of the laws of the said State, originally sought injunctive relief prohibiting the defendant, Southwestern Electric Power Company, from interfering with the operations of plaintiff with respect to the construction of Louisiana Interstate Highway 1-20, and further requiring defendant to remove and relocate its installations existing upon the streets in the City of Shreveport embraced within said highway project. Since institution of the suit certain changes have occurred. Shreveport Transit Company, Inc., by petition of intervention, has been recognized as an additional party defendant. The original action for injunctive relief has been abandoned, in view of the agreement of defendants to perform the actual work and operations attendant upon the removal and relocation of their installations and facilities, and the suit has been converted into an action for a declaratory judgment. In this form plaintiff has prayed for judgment recognizing its right and authority to require and force the defendants, at their cost, to effect the relocation and re-adjustment of their facilities as required by petitioner in connection with the construction of the said highway. After trial there was judgment rejecting the relief sought by plaintiff, from which it prosecutes this appeal.
Reduced to its simplest terms, the question presented is whether the cost of relocation and re-adjustment of defendant's facilities should be borne by defendants, or if they are entitled to reimbursement of such costs by plaintiff.
Most of the material facts involved are established by and comprehended in a stipulation of counsel for the respective parties litigant, which agreement acknowledges the existence, inter alia, of the following facts:
Southwestern Electric Power Company is a public utility engaged in the business of generating, transmitting and distributing electric energy to consumers in an area including the City of Shreveport; is subject to the jurisdiction of the Louisiana Public Service Commission and operates by virtue of its ownership of a franchise from the City of Shreveport granting the right to operate and maintain an electric transmission system in and along the streets, alleys, avenues and sidewalks of said city. Reference to documents attached to the stipulation in this connection evidences the fact that, without compulsion on the part of the City, Southwestern entered into a contract with said municipality effective October 1, 1944, under which it voluntarily agreed to pay the city a sum of money equal to two per cent of its gross receipts from the sale of electric energy for residential and commercial purposes within the limits of the City of Shreveport, the total amounts of said payments, since the 1944 franchise amendment, having exceeded one and a quarter million dollars.
Shreveport Transit Company, Inc. is also a public utility corporation engaged in the operation of trolley and gasoline bus lines for the transportation of passengers over regularly scheduled routes in the City of Shreveport under the terms of a franchise granted by the City in the year 1957, the provisions of which franchise require the fixing of rates upon the basis of an operating ratio of revenues derived therefrom.
The City of Shreveport maintains and operates a water and sewerage system in a proprietary capacity, and, by agreement with plaintiff Highway Department, the said municipality is to be reimbursed for the cost incurred in connection with its relocation of facilities and installations in the construction of the Interstate Highway.
The Department of Highways of the State of Louisiana is a political corporation created under the laws of the State and possessing such powers as have been granted thereto. Presently the Highway Department is engaged in the construction of Louisiana Interstate Highway 1-20, which construction has been undertaken by the State as a Federal-Aid project in co-operation with the United States Government. *312 This Federal Expressway is a new highway and is superimposed over and constructed upon streets of the City of Shreveport; it is not a project for the renovation, widening or other use of existing city streets but is a completely new construction utilizing areas other than those presently used as existing streets in the City of Shreveport.
Under the provisions of Federal Statutes, Federal funds may be used for payment of the cost of relocation of utility facilities to the extent of ninety per cent thereof unless such payment violates the law of the State or a legal contract existing between the utility company and the State prohibiting such reimbursement. In the instant case there is no contention as to the existence of any such contract. The argument as to the constitutional prohibition is later considered in this opinion.
The construction of the Interstate Highway involved requires its passage over, under and across many of the existing streets and alleys of the City of Shreveport and requires the adjustment or relocation of defendant's facilities within the rights of way which have been acquired or are being used in the highway construction.
Plaintiff has made no attempt to acquire from defendants, by expropriation, purchase or otherwise, any of the rights granted and held under the existing franchises from the City of Shreveport. The said municipality, according to the testimony of the Mayor taken on trial of the case, has, in effect, refused to make any demand upon defendants for the removal or relocation of their facilities as presently existing in and along the streets, alleys and sidewalks of the said city.
It was further established by testimony on trial that the cost of the work to be performed by defendants in meeting plaintiff's requirements will represent expenditures, within the limits of the City of Shreveport alone, in the sum of approximately $125,000 to $150,000 by Southwestern, and approximately $50,000 by Shreveport Transit.
Numerous assignments of error are advanced by distinguished counsel for plaintiff, but we think the controlling issues presented by this appeal may be reduced to a determination of the following questions:
(1). Is the plaintiff vested with the right to exercise the police power of the State?
(2). Does the present action seeking to impose the cost of operations required by plaintiff constitute a valid exercise of the police power?
Proceeding to a discussion of these issues in the order stated, we have seriously considered counsel's argument that the Department of Highways is vested with the right to exercise the police power of the State under the authority of Article VI, Sections 19 and 19.1 of the Constitution of the State of Louisiana, LSA, and under LSA-R.S. 32:2, subd. A and 48:26.
Counsel urgently argues that Section 19 of Article VI of the Constitution providing for the establishment and maintenance of a system of State highways and authorizing "* * * the acquisition, by expropriation or otherwise, of rights of way * * *" justifies the interpretation that the right to use the police power of the sovereign State of Louisiana has been conferred upon or delegated to the plaintiff as a governmental agency. In our opinion this sought-for construction would require the application of the wildest sort of speculation and conjecture as to a constitutional intent and purpose completely unjustified by the verbiage upon which reliance is placed. In the absence of a more specific definition of terms, we cannot conclude that the mere use of the word "otherwise" justifies, even by implication, the taking of property by exercise of the police power. In our opinion the reasonable construction of the word would simply indicate the recognition of *313 conventional agreements such as donations or purchases.
We attempted to point out in our opinion in Arkansas Louisiana Gas Company v. Louisiana Department of Highways, 104 So.2d 204 (writs denied) that the use and exercise of the police power must be carefully guarded and is not subject to improper use under the guise of the protection of the public.
Nor can we find any support for the same contention in the provisions of Section 19.1 of Article VI, particularly paragraphs (7) and (10), to which counsel calls special attention. Examination of the entire article, and specifically the paragraphs enumerated, justifies only the conclusion that the general control, supervision and authority for construction, maintenance and improvement of State highways and bridges and the regulation of traffic thereon is vested in the established departmental agency. Such authority is far removed and not to be compared with the exercise of the police power which can, in response to urgent needs, be used even for uncompensated destruction of private property.
The cited statutory provisions add nothing to the extent of plaintiff's authority, but we do find in LSA-R.S. 32:2, subd. A the only reference to the exercise of police power, and for that reason we quote such section in its entirety, as follows:
"The department shall supervise and regulate all traffic on the public highways of this state; enforce the provisions of this Chapter; promulgate rules and regulations not inconsistent with this Chapter and the general law relative to public highways and their construction, maintenance and use; investigate the public highways and effect methods and practices relative thereto, as in its judgment and experience it deems advisable; and enforce them as an exercise of the police power of this state."
Again we point out that this asserted delegation of the police power, which may be subject to some constitutional limitation, does not purport to authorize nor justify the taking or damaging of private property without compensation therefor. The same observation is appropriate to the provisions of LSA-R.S. 48:26, which authorizes the Department to perform every act necessary, convenient or incidental to the exercise of its power, the discharge of its duties and the performance of its functions.
We have no quarrel, with the constitutional and statutory provisions above noted, nor do we intend to derogate in any respect from the power and authority of plaintiff in the performance of its proper functions. But we do say, with the utmost conviction, that we find neither reason nor excuse for application of the doctrine of the exercise of the police power solely for the purpose of attempting to escape payment for damages to private property.
While it is true, as observed by counsel for plaintiff, that this case is distinguishable from that of Arkansas Louisiana Gas Company v. Louisiana Department of Highways, cited supra, we cannot agree that the distinctions affect the principles of law therein stated. It is pointed out that the instant case does not involve a property right in the nature of a servitude as was the fact in the cited case; that defendants have no vested interest or rights in the public thoroughfare of a municipality, and that a franchise granted by a municipality is nonetheless subject to the exercise of the police power of the State from whom the municipal entity, with or without a home rule charter, holds its authority. Conceding, arguendo, all of these differentiations, we cannot observe in what manner they should affect the ultimate question with reference to the right of plaintiff to exercise the police power for the purpose established under the facts of the instant case.
Counsel for plaintiff rely heavily upon the case of New Orleans Gaslight Company *314 v. Drainage Commission, 111 La. 838, 35 So. 929, 933, affirmed 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831. We think it pertinent to observe that the plaintiff company in the cited case was a creature of legislative statute consolidating two previously existing companies holding charters from the State Legislature. In the beginning of its opinion, after recital of these facts, the Supreme Court declared:
"At the period of the passage of these acts and the creation of the corporations, the constitutional provision that private property shall not be damaged for public purposes without just compensation was not in force."
Since 1879 the several constitutions of our State have contained a specific prohibition against the taking or damaging of private property without compensation. Presently the constitutional provision reads, under Section 2 of Article I:
"Except as otherwise provided in this Constitution, private property shall not be taken nor damaged except for public purposes and after just and adequate compensation is paid." (Emphasis supplied.)
In this connection we wish to add to our comments in Arkansas Louisiana Gas Company v. Louisiana Department of Highways, cited supra, the following pertinent comment from the case of In re Jacobs, 98 N.Y. 98, 50 Am.Rep. 636, quoted in People v. Lochner, 73 App.Div. 120, 76 N.Y.S. 396, 399:
"Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final nor conclusive. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act, and see whether it really relates to, and is convenient and appropriate to promote, the public health."
It is further to be noted that both the Louisiana and the United States Supreme Courts in the New Orleans Gaslight Company case fully recognized the purpose of the taking as being directly related to the interest of the public health and welfare. This interest was designated in the opinion of the United States Supreme Court as being "* * * one of the most important purposes for which the police power can be exercised." [197 U.S. 453, 25 S.Ct. 473]
In this connection our examination of the stipulation of facts and the brief transcript of testimony in the instant case fails to disclose the establishment of the necessity for the exercise of the police power as opposed to the exercise of the power of eminent domain. No urgent necessity, exigency or emergency justifying the use of the police power has been established by the record. It is true that counsel for plaintiff diligently argue the extensive contribution to public safety and convenience which is represented by the construction of interstate highways through the cooperation of the State and Federal Governments. But this remains exclusively in the realm of argumentation.
The force of the point attempted to be made in the above observation is exemplified by the differentiation made by the State in its treatment of the property of the municipalitythe City of Shreveportand the property of the defendants. We have failed to discover any logical basis which justifies payment for damages to property owned by the municipality in connection with a proprietary operation and the property of the defendant private utilities. The furnishing of water and sewerage to the residents of the city by a municipally owned water reservoir and distribution system, according to the testimony of the Mayor, and, indeed, as a matter of common knowledge, is designed for the production of revenue. While it may be true that taxes, if and when needed by this operation, *315 could be imposed upon the citizens of the municipality, we cannot conceive that this factor is sufficient of itself to justify the discrimination which is being exercised by plaintiff. It can just as logically be argued that the people of Shreveport will be required to pay indirectly for the unforeseen and unexpected substantial expenditures necessitated by plaintiff's claims against these defendants.
Proceeding to comment on other authorities cited by able counsel on this point, we note that the right of the City of Shreveport to require the removal of railroad piers obstructing the free use of a public street which was involved in City of Shreveport v. Kansas City, S. & G. Ry. Company, 167 La. 771, 120 So. 290, 62 A.L.R. 1512, was specifically provided in the charter of said City as it then existed and the court held that the City was merely exercising its legitimate police power, and, further, that the State in the exercise of its police power has the right to authorize a city to destroy property.
Again we are impelled to note the distinction that in the instant case the City has refused to order the removal and relocation of defendant's facilities from the municipal thoroughfare over which it exercises complete authority and control.
We find no necessity for continuing an analysis of the numerous authorities both in and out of the State to which counsel makes reference.
Our answer to the issues first enumerated in this opinion are, first, that plaintiff is not vested under the constitutional and statutory provisions relied upon to validly exercise the police power for the purpose asserted in this action.
It must be emphasized that this case does not concern the right of the City or of the State to require the relocation and readjustment of utility facilities at the expense of the operator thereof. The existence and the exercise of such a right are unquestionably established and confirmed by our jurisprudence in which may be particularly noted the outstanding cases of City of Shreveport v. Kansas City, S. & G. Ry. Co.; New Orleans Gaslight Company v. Drainage Commission, both cited supra, and New Orleans Gas-Light Company v. Hart, 40 La.Ann. 474, 4 So. 215. Rather, we are directly concerned with the question of the proper exercise of the police power, not by the State nor by the municipality, but by a corporate entity created under authority of the State Legislature under the circumstances of the instant case. In contemplation of this point it is not only appropriate but requisite that we determine if resort to the extreme and zealously restricted exercise of such power is requisite and necessary.
In the examination of our jurisprudence we note the pronouncement by our Supreme Court of certain standards by which the exercise of the police power is governed. In Fernandez v. Alford et al., 203 La. 111, 13 So.2d 483, 489, the Court declared:
"Police power, according to its generally accepted definition, encompasses the protection of lives, health and property of citizens and the preservation of good order and public morals." (Authorities cited) "It is a power inherent in every sovereignty to govern men and things; and thereunder the Legislature may, within Constitutional limits, prescribe regulations for the promotion of the public health, morals and general welfare." Citing Union Ice & Coal Company v. Town of Ruston, 135 La. 898, 66 So. 262, L.R.A.1915B, 859.
In Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 255, 146 A.L.R.2d 680, the opinion of the court quoted and approved the general rule as to the valid exercise of the police power set forth in Sections 302 and 303 of 11 Amer.Juris., verbo "Constitutional Law," which quotation we repeat as follows:

*316 "The fixed rule and basic standard by which the validity of all exercise of the police power is tested is that the police power of the state extends only to such measures as are reasonable, and that all police regulations must be reasonable under all circumstances. Too much significance cannot be given to the word `reasonable' in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes any restrictions on such rights. It has been said that the only limitation upon the exercise of the police power is that such exercise must be reasonable. The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable to arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power.

"In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object within the domain of the police power. A statute to be within this power must also be reasonable in its operation upon the persons whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive.
"Section 303. Appropriateness of Means.It is a general rule that in order for a police measure to be reasonable, the means adopted must be reasonably necessary and appropriate for the accomplishment of the legitimate objects falling within the scope of the power. In order to sustain legislative interference by virtue of the police power, either by a statute or a municipal ordinance, it is necessary that the act should have some reasonable relation to such objects, or, for more specific examples, to the public welfare or public health. Moreover, the law must tend toward the accomplishment or promotion of such purposes in a degree that is perceptible and clear, either in preventing some offense or manifest evil or in furthering some such object. The means employed should not go beyond the necessities of the case.

"The mere assertion by the legislature that a statute relates to the public health, safety, or welfare does not in itself bring that statute within the police power of a state, for there must always be an obvious and real connection between the actual provisions of a police regulation and its avowed purpose and the regulation adopted must be reasonably adapted to accomplish the end sought to be attained. A statute or ordinance which has no real, substantial, or rational relation to the public safety, health, morals, or general welfare is a palpable invasion of rights secured by the fundamental law and cannot be sustained as a legitimate exercise of the police power. One application of the familiar rule that the validity of an act is to be determined by its practical operation and effect, and not by its title or declared purpose, is that a constitutional right cannot be abridged by legislation under the guise of police regulation. The exercise of the power must have a substantial basis and cannot be made a mere pretext for legislation that does not fall within it. The legislature has no power, under the guise of police regulations, arbitrarily to invade the personal rights and liberty of the individual citizen, to interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations, or to invade property rights." (Emphasis supplied in the opinion of the Supreme Court.)
Continuing its scholarly development of the restrictions upon the exercise of the *317 police power the opinion of Mr. Justice Hamiter declared:
"In State v. Legendre (138 La. 154, 70 So. 70, L.R.A.1916B, 1270) this court held:
"`It is the duty of the courts to enforce the state's police regulations enacted by the Legislature in good faith and with reasonable and appropriate regard for the protection which the state owes to the life, health, and property of her citizens. * * * The fourteenth amendment was not intended to hamperor to authorize the courts to interfere withthe state's exercise of its police power to regulate and promote the morals, health, and safety of her citizens. * * * The freedom of the right of citizens to make contracts is subject to such restrictions as the Legislature may impose, in good faith and with a reasonable and appropriate regard for the welfare of the citizens, in the exercise of the police power of the state * * * But a statute containing a mere pretense of promoting or protecting public health or public safety, and having no real or reasonable relation to its pretended object, is an abuse of the police power of the state, and, in so far as it invades the fundamental rights of her citizens, it is the province and duty of the courts to adjudge such a subterfuge invalid, and to uphold the Constitution. * * *"
"In State v. Blake, 170 La. 175, 127 So. 592, 597, we approved the following expressions contained in Lochner v. State of New York, 198 U.S. 45, 56, 25 S.Ct. 539, 49 L.Ed. 937, 941, 3 Ann.Cas. 1133: `It is a question of which of two powers or rights shall prevail,the power of the state to legislate or the right of the individual to liberty of person and freedom of contract. The mere assertion that the subject relates, though but in a remote degree, to the public health, does not necessarily render the enactment valid. The act must have a more direct relation, as a means to an end, and the end itself must be appropriate and legitimate, before an act can be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract in relation to his own labor. * * *'
"In City of Alexandria v. Hall, 171 La. 595, 131 So. 722, 724, the following language found in State ex rel. Newman v. City of Laramie, 40 Wyo. 74, 275 P. 106, was quoted approvingly:
"`"`To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.'

"`"The law must have a real or substantial relation to the public interest in the matter regulated. * * * And, while the courts repeatedly have said they should not decide as to the expediency of a measure, it has come to be settled by the high court whose decisions establish the rules limiting the exercise of the police power, that a court should and does determine whether, in its judgment, the law has a real or substantial relation to objects and purposes recognized as legitimate. * * * The claim that the restriction in the law bears a reasonable relation to a public interest must not rest on mere conjecture, but must be supported by something of substance.'"" (Emphasis supplied.)
*318 In the light of the above well established and recognized principles a careful examination of the record before us does not disclose the necessity for resort to the drastic remedy of the police power for the attainment of the intended purpose. It is, of course, contended that the construction of the Interstate Highway involved has a direct bearing upon the public convenience and safety but we regard this as purely a generalization which is, in our opinion, insufficient to support and justify the exercise of the police power. There are few functions of government which do not affect, in greater or less degree, the general welfare, but the extension of the doctrine of the right to use the police power in every such instance would result in an eventual disregard of almost all private rights, particularly with respect to property, guaranteed by both Federal and State Constitutions, and should be zealously limited by the judicial branch of government.
It is also pertinent to observe that the action taken by plaintiff in the instant case does not partake of the solemn and specific expression of legislative will, but must be classified as an administrative policy which appears to be both arbitrary and discriminatory.
In specific support of the above conclusions we think it advisable to make two observations which appear to us to vitally affect the rights of the parties litigant in the instant case. First, it must be considered that the removal and relocation of existing utility facilities in this case have been necessitated by the construction of a new highway. The facilities themselves as heretofore existing within the streets and public areas of the City of Shreveport have not constituted an interference with or a danger to the rights of the general public. Such interference and danger, if any there be, is attributable solely and exclusively to the operations of plaintiff in the location and construction of the new highway. We think, therefore, that the explicit provision of LSA-R.S. 48:382 is applicable. This provision reads:
"When a highway is constructed across (such) an existing facility or utility, the agency constructing or causing the construction of the highway shall be responsible for the construction of an appropriate and adequate crossing and for its subsequent maintenance."
There can be no argument as to the conclusion that it is the construction of the limited access highway which requires the removal and relocation of defendant's facilities, for reference to brief of counsel for plaintiff discloses the following unequivocal admission of this point:
"The State of Louisiana, through the Department of Highways, in the course of constructing the limited access highway through the City of Shreveport, must cross a number of city streets, in which there are utility lines owned by the city and the defendant and intervenor. At the point where the construction intersects the street, it is necessary that all these utility lines be adjusted, poles moved, mains lowered, lines raised and strengthened, etc. The details are not important for this discussion as there is no dispute on this point."
Second, we think the clear intent and purpose of the policy established by Federal legislation is evidenced by 23 U.S.C.A. § 123, paragraph (a), which reads:
"When a State shall pay for the cost of relocation of utility facilities necessitated by the construction of a project on the Federal-aid primary or secondary systems or on the Interstate System, including extensions thereof within urban areas, Federal funds may be used to reimburse the State [under this section] for such cost in the same proportion as Federal funds are expended on the project. Federal funds shall not be used to reimburse the State under this section when the *319 payment to the utility violates the law of the State or violates a legal contract between the utility and the State." (Emphasis supplied.)
Paragraph (b) of the same section defines the term "utility" as including publicly, privately and cooperatively owned utilities, and paragraph (c) defines the term "cost of relocation" as including the entire amount paid by such utility properly attributable to such relocation, subject to certain specified deductions.
That plaintiff has determined to avail itself of the above provision is clearly evidenced by the stipulation in the instant case that the cost of relocation of publicly owned utilities is to be assumed by the Federal and State governments. No basis for this discrimination is established by the record.
We observe the contention in brief of counsel for plaintiff that the State is prohibited from paying defendants' costs under Article IV, Section 12 of the Constitution. This unqualified statement is not supported by further argument and our examination of Section 12, which prohibits the use of the credit of the State for the benefit of "* * * any person or persons, associations or corporations, public or private; * * *", completely fails to establish any basis for the conclusion urged. Plaintiff's actions in the matter destroy this argument, for if it would be a violation to use the funds available for the benefit of a private corporation, it is equally illegal to use such funds for the benefit of a public corporationthe City of Shreveport. We reject this argument as being without merit.
Finally we think it desirable to note the argument advanced by counsel for plaintiff that the franchises of defendant corporation constitute neither servitudes nor property rights, but merely permissive licenses to use city streets. This contention is directly refuted by the pronouncement of the Supreme Court in State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665, 669, in which a privilege or license is distinguished from a franchise. The opinion of Mr. Justice Hawthorne contained the following observation:
"* * * a franchise to use the streets in its usual sense is the right to use or occupy the streets for a stated period of time, for which a valuable consideration is paid, and contemplates a contract between the municipality and the individual to whom granted, and vests in the holder thereof a limited property right to use the public streets." (Authorities cited) (Emphasis supplied.)
The opinion further held that when such a franchise was granted it became a private right, the property of the grantee, subject only to governmental control.
For the reasons assigned the judgment appealed from is affirmed.