CASE 35—INDICTMENT—DECEMBER 1.

# Avent Beattyville Coal Company v. Commonwealth.

APPEAL FROM LEE CIRCUIT COURT.

1. CONSTITUTIONAL LAW—PAYMENT OF EMPLOYES IN OTHER THAN LAWFUL MONEY.—Section 1350 of the Kentucky Statutes, which provides for punishment of certain employers who shall pay their employes in other than lawful money, is not unconstitutional.

2. SAME—CONSTRUCTION OF STATUTE.—Under the statute contracts fixing pay-days at reasonable periods may be made, on which and not before the laborer may demand his pay in money; and if the necessities of the workman demand it, he may, of his own choice before the arrival of pay-day, obtain relief of his employer through the use of checks for merchandise without subjecting the employer to the penalties denounced in the statute.

3. INDICTMENT OF CORPORATION.—The defendant being indicted as a corporation, failure to show that it was such was fatal to the prosecu-

Avent Beattyville Coal Company v. Commonwealth.

tion, as was also the failure to show that the payments complained of were made after the statute went into effect.

ED. M. WALLACE AND ROBERT RIDDELL FOR APPELLANT.

1. The indictment failing to charge that the prosecuting witness actually worked in appellant's coal mines, or that he earned any thing, or that the appellant owed him any thing at any time, it was defective, and the demurrer should have been sustained. (Criminal Code, sec. 124)

2. The testimony of witnesses who did not work for appellant, and who knew nothing about the prosecuting witness working for it, was incompetent.

3. Appellant having been indicted as a corporation, the failure to prove that it was a corporation was fatal to the prosecution.

4. If the indictment was under section 244 of the Constitution, no penalty could be inflicted, as that section imposed none. If, under the act of the Legislature of October 3, 1893, the failure to prove that witness did not receive money for his wages after the passage of that act, was fatal to the prosecution. (New Constitution, sec. 244; Acts 1892–3, vol. 1, p. 54.)

5. Appellant having contracted with its employes to pay them their wages in lawful money on fixed pay-days, advancements to them by means of the check system before the regular pay-day is not unlawful. (Bill of Rights, secs. 3 and 19; Bailey v. Commonwealth, 11 Bush, 691.)

G. W. GOURLEY OF COUNSEL ON SAME SIDE.

W. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

The evident intention of the Constitution and statute being to require the payment of wages to employes in lawful money so as to give the utmost freedom in the expenditure of such wages, if any payment was made by means of checks to be good for merchandise at appellant's store, appellant was properly convicted under the law; but if the issue of the checks was not a payment, but only a convenience in keeping the books or statement of accounts from one pay-day to another, the instruction of the court was erroneous.

If the employer and employe may agree upon a stated time for payment in full in lawful money for labor performed up to the day of settlement, the question to be decided is, does payment in lawful money on that day answer the requirements of the law?

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

For failing to pay one of its wage-earners in lawful money, the appellant was indicted in the Lee Circuit

Court, tried, found guilty and fined one hundred dollars. Its chief ground of complaint on this appeal is, that the proof of the State does not sustain the finding of the jury, and, therefore, the peremptory instruction asked by it should have been given by the court.

The statute alleged to have been violated provides as follows: "That any corporation, or person or persons, having the ownership or control of any factory, mine or workshop in this Commonwealth, who shall violate the provisions of section two hundred and forty-four of the Constitution, reading as follows: 'All wage-earners in this State employed in factories, mines, work-shops or by corporations shall be paid for their labor in lawful money,' shall be guilty of a misdemeanor, and, on trial and conviction had in any court of competent jurisdiction, shall be fined not exceeding five hundred dollars for each violation thereof." (Kentucky Statutes, sec. 1350.)

The only competent testimony offered by the State was that of Henry Couch, who was the laborer whose wages were not paid in lawful money according to the allegations of the indictment.

He testified that he worked for the defendant in its coal mines in December, 1893, and in January, 1894, under a contract that on a fixed day he was to be paid all the wages due him for the work done by him during the previous month. That day was the Saturday nearest the fifteenth of each month. That on that day the defendant always paid him in lawful money all that was due him. That he voluntarily applied to the defendant's clerk and obtained

from him "checks," or round coin-like metals, stamped with the company's name, and having on them the figures 5, 10 and so on up to 100, meaning five cents or ten cents, and also the words, "payable in merchandise." That he was never asked to take any of these checks, but applied for them himself, always before his wages were due under his contract, and used them at the company's store, where he got goods, etc., as cheaply as he could at any other store in the town. That these checks were a convenience to him and to the miners. On pay-days the amounts he had gotten in checks were deducted from the amount of his earnings and he was paid the balance in money. The defendant did not pay money for these checks on pay-day. On this proof, it is insisted that no case is made out:

First. Because no time is fixed by the witness when the checks were delivered to him. As the statute was not in force until October 3, 1893, it is urged that a failure to pay the witness in lawful money or deliver him checks for his wages, prior to that date, was not in violation of law.

Second. Because though indicted as a corporation, there was no proof conducing to show that the defendant was such. If those violating the statute are not incorporated, they were liable as individuals and not as the "Avent Beattyville Coal Co." That the omission to prove these facts is fatal to the prosecution seems clear enough, but even with the omitted proof in, the peremptory instruction should have been given.

The legislation in question is wholly new to our

State. If its letter is to control, then the delivery of these checks as payments on the wages earned prior to the regular pay-day of the company, is in violation of law. A miner works a week and has earned a certain sum. His wages are not due, but he is in need of provisions for his family. He applies to the company for relief, and in part payment of his wages it delivers to him not lawful money, but orders or checks on its store for the provisions he needs.

This is confessedly a great convenience to the workman, and we can not believe that it is in violation of a reasonable construction of the law. The object of the legislation was to protect the weak against the strong, and the wage-earner is regarded as liable to imposition and oppression at the hands of ' his employer. The statute gives him the right to demand his wages in money whenever it is due him, and any device resorted to by the employer or any contract exacted of the employe, requiring the acceptance of other than lawful money for labor, is prohibited.

If the time between pay days were unreasonably extended, or if before employing laborers agreements were exacted of them that they were to take even a part of their earnings in merchandise, the offense against the law would be complete. It may be claimed that this is an abridgment of the right of those laborers under no disability to contract for themselves, and the legislation is arbitrary and opposed to the spirit at least of the Bill of Rights. But so may the usurer complain of the laws denying

Avent Beattyville Coal Company v. Commonwealth.

him the right to enforce agreements to pay more than a specified rate of interest for the use of money. The object in view is the same in all such legislation—to prevent oppression and overreaching.

The law says, however, that the wage-earner shall be paid for his labor in lawful money, but when? It does not say every day, or every week; hence, we conclude that contracts fixing pay-days at reasonable periods may be made, on which and not before the laborer may demand his pay in money. If such periods be fixed even by consent of the laborer, so that the effect is to force him by reason of his necessities to apply for and accept his pay in checks for merchandise, the contract is in violation of law, and the enforced delivery and payments are unlawful. But if fixed at reasonable periods, and the necessities of the workman demand it, he may, of his own choice, obtain relief of his employer through the use of checks for merchandise, without subjecting the latter to the penalties denounced in the statute.

Any other construction would in the end disastrously affect the wage-earner for whose benefit the law was enacted. There has been no suggestion of oppression in the argument, and none in the testimony, growing out of the regulation of the pay-days in this case, and we have assumed it to be reasonable.

We think the proof fails to show any violation of the Constitution or the statute, and the judgment is reversed with directions to dismiss the indictment.