CAMBRIA COAL COMPANY, PLAINTIFF IN ERROR, *v.* J. K. COOPER, *et al.,* DEFENDANTS IN ERROR.

(*Knoxville,* September Term, 1932.)

Opinion filed November 26, 1932.

J. H. UNDERWOOD and LINDSEY, YOUNG, YOUNG & ATKIN, for plaintiff in error.

B. F. ALEXANDER, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Defendants in error acquired $700 in "scrip," issued by plaintiff in error to its employes, presented same on a regular pay day, and demanded its redemption in cash, which was refused. Plaintiff in error offered to redeem said scrip in merchandise at current prices, and is still willing to do so. These scrip orders are made of metal in denominations ranging from one cent to five dollars. On one side of this scrip is stamped, "In Trade Only," and on the other side, "Cambria Coal Mining Co., Briceville, Tenn."

The trial court entered judgment in favor of defendants in error for $700, together with a 25 per cent penalty in the sum of $175, and an attorney's fee of $50, as provided by chapter 11, Acts of 1899, as amended by chapter 90, Acts of 1915. The pertinent provisions of the Act of 1899 are as follows:

"SECTION 1. Be it enacted by the General Assembly of the State of Tennessee, That all persons, firms, corporations and companies using coupons, scrip, punchouts, store orders, or other evidences of indebtedness to pay their or its laborers and employes, for labor or otherwise, shall, if demanded, redeem the same in the hands of such laboror, employe or *bona fide* holder in good and lawful money of the United States; Provided, The same is presented and redemption demanded of such person, firm, company or corporation using same as aforesaid, at a regular pay day of such person, firm, company or corporation to laborers or employes, or if pre-

sented and redemption demanded as aforesaid by such laborers, employes, or bona fide holders at any time not less than thirty days from the issuance or delivery of such coupon, scrip, punchout, store order or other evidences of indebtedness to such employes, laborers or *bona fide* holder. Such redemption to be at the face value of said scrip, punchout, coupon, store order or other evidence of indebtedness; Provided further, Said face value shall be in cash the same as its purchasing power in goods, wares and merchandise at the commissary company store or other repository of such company, firm, person or corporation aforesaid.

"SEC. 2. Be it further enacted, That any employe, laborer or *bona fide* holder referred to in section 1 of this act, upon presentation and demand for redemption of such scrip, coupon, punchout, store order or other evidence of indebtedness aforesaid, and upon refusal of such person, firm, corporation or company to redeem the same in good and lawful money of the United States, may maintain in his, her or their own name an action before any court of competent jurisdiction against such person, firm, corporation or company, using same as aforesaid for the recovery of the value of such coupon, scrip, punchout, store order or other evidence of indebtedness, as defined in section 1 of this act.''

This Act was upheld in *Harbison* v. *Knoxville, Iron Co.,* 103 Tenn., 421, 424, and *Dayton, etc., Co.* v. *Barton,* 103 Tenn., 604, 606-607. In the first named case it was said:

"The defendant is a domestic corporation engaged in the manufacture and sale of iron and in the mining and sale of coal. It employs about two hundred laborers, and has one regular pay day each month, being that

Saturday which is the nearest to the 20th of the particular month. On this day each employe is paid in cash the amount due him up to the first day of the month but never up to the day of payment. On every Saturday in the month, however, the defendant holds itself in readiness to pay all of its employes the full amount then due them if they will receive it in orders for coal, at twelve cents per bushel, and the afternoon of every Saturday, from 1 o'clock to 5 o'clock, is set apart for that purpose. About 75 per cent of all the wages earned by the laborers is paid in these coal orders.''

In the last named case the facts are thus stated:

''The defendant company is a private corporation, organized under the laws of Great Britain, and engaged in manufacturing iron, mining coal, and making coke, at and near Dayton, Tennessee. It also conducts a general merchandise store, from which it sells goods to its employes, and to others desiring to buy.

''In the operation of its furnaces, mines, and coke ovens it employs from five hundred to six hundred laborers, whose monthly wages aggregate from $12,000 to $20,000. These wages are paid partly in orders on the company's store for merchandise, called 'punchouts,' and partly in money. Punchouts are issued any day, and for all wages then earned, to all laborers desiring them; but money is paid monthly only, on what is called the regular pay day. This day comes about the 20th of each month, and at that time all wages earned up to the first day of that month, and not previously paid in punchouts, are paid in money. No cash is ever paid on the regular pay day of any month for wages earned during that month; but, so far as payments in money are concerned, the company's method keeps it always in arrears about twenty days.''

From the Act of 1899, as well as from the construction thereof by this court in the two cases referred to, it is apparent that the evil sought to be corrected was the paying of the employes for labor performed with "coupons, scrip, punchouts, store orders, or other evidences of indebtedness." Such is said to be the object of acts of this character in 39 Corpus Juris, 233. If, under the facts of the case under consideration, the employer issued the scrip sued on in payment of wages, then the judgment of the trial court is correct. It becomes necessary, therefore, to state the uncontroverted facts of this case.

The plaintiff in error is engaged in operating a coal mine in Briceville, and has in its employ between five and six hundred men. In connection with the operation of this coal mine the plaintiff in error also operates a commissary store for the convenience of its employes. It has two pay days each month, as provided by chapter 28, Acts of 1917, and on these pay days plaintiff in error pays its employes all wages due them in full in cash. It never issues "scrip" in payment of wages, but only as a proper means of extending credit to employes desiring such at the company's store between the regular pay days. This "scrip" is issued to the employes when they are considered a good credit risk, whether they have then earned any wages or not. Plaintiff in error always redeems its "scrip" in merchandise, and so redeeming it, sells its goods at the same price that it would for cash. On account of credit thus extended plaintiff in error has sustained a loss of $5,452.95 during the past five years. If an employe desires to purchase merchandise on credit he applies to the credit man of the company, who, if he considers the risk good, issues to the ap-

plicant "scrip," as an evidence of the credit to which he is entitled in the store. We quote extensively from the testimony of Mr. Henderson, president of plaintiff in error, as to the reason for using this form of order, as follows:

"The form of the order on our store which we issue to our employes is very important. It would not do at all for the credit man to issue a verbal order of credit, because this method of doing it is subject to errors and misunderstanding, and, therefore, to dissatisfaction. A written order on the store would be reasonably safe, but very inconvenient. The employe might not want to trade up the full amount of his order at one time, and in such an event the store clerks would have to write down on the back of his order the items which he had purchased and what it amounted to, and if there should be anything left, the question would arise who should have possession of the order until its full amount should be traded out. The employe would not want to leave it in the possession of the employer. No matter with whom it might be left, it might be lost or changed, and disputes and dissatisfaction would be the result, and it would require several additional bookkeepers and sales clerks to prepare and fill written orders on the store, and even this extra help would not meet the demands during times when several people were calling for orders at the same time. It, therefore, follows that the written type of order is more expensive and is not either safe, convenient or satisfactory.

"Another type of order on the store which has been thoroughly tried out is the punchout, which is a card issued to the individual employe, and the amount of the order is shown on the margin in figures. It is the duty

of the clerk to punch out of these marginal figures the amount of the purchase of the employe. The punchout is then left in the possession of the employe with any balance due on it. The objection to this type of order is usually raised by the employes, because they are liable to lose it or they cannot safely trust it to the children in their families to take to the store, when small purchases are needed, because they fear that the child might lose the punchout or they might distrust the store clerks in punching out more than the purchases amounted to. The punchout type of order has generally been discarded as being unsatisfactory all around.

"The metal type of order is the most convenient and reliable and flexible type of order that has ever been invented. It is generally referred to as scrip. We have adopted this type of order for use in our company store. We carry these scrip orders in denominations as follows, $5, $1, 50c, 10c 5c, and 1c. Of course the employes' names occur nowhere on this metal type of order. Whatever amount the employe calls for and the credit man agrees to give him, is given to him in such denominations as the employe may designate. On one side of this order the following words are stamped: 'In Trade Only' and the manufacturer's trade-mark and on the other side there is stamped as follows: 'Cambria Coal Mining Co., Briceville, Tenn.'

"Upon obtaining this scrip order on the store, the employe then and there, or at any time most convenient to him, goes to the store and buys goods at the current prices, so long as he has the evidence of credit extended him. He pays as he goes, and if there is any change coming to him, it is not paid in cash but in the same kind of script.

"This type of store order is favored by the employe for another reason. The employe can take it home with him and either turn over part or all to his family, as he may desire, and they can send their children to the store to make small purchases and give them script change to pay for the goods bought. This type of store order is favored by the company because it is the most economical of all types as it is used over and over again, it consumes less time to issue it than any other type. The employe and store clerk has less trouble with it than any other kind of order, and another very desirable feature about it is the ability of the company to know at the end of a day how much credit has been extended during the day by the credit department, and also to know how much of this type of orders have been filled by the store clerks as the clerks are required at the end of the day to count up and turn back to the credit department all of the $1 and $5 credit orders received during the day."

It seems to us that upon principle the form of the order, whether verbal, in writing, or in scrip, is immaterial. Either is but the means by which the owner instructs his clerk to let the bearer have a certain amount of merchandise to be deducted from his wages when due.

There is a marked distinction between paying an employe's wages in scrip and advancing to him money or merchandise to be deducted from his wages when due. We find nothing in the statute which prohibits the employer from advancing to the employe money or merchandise on his wages. This is such a universal custom that it would result in revolutionizing business should the court read such an inhibition into the statute. Every farm operator, merchant, manufacturer, or other em-

ployer of labor, follows this custom, and to prohibit such a practice would often result in great hardship to the employe. At mining camps and in the agricultural sections there is frequently but one store. If its owner were prohibited from advancing supplies to its employes, it would make it exceedingly difficult for him to obtain labor. It should be borne in mind that the statute applies to "all persons, firms and corporations." To give it the construction contended for would be equivalent to holding that an employer could never extend credit to an employe. This, in our opinion, was never contemplated by the legislature.

Defendant in error, J. K. Cooper, was a former employe of plaintiff in error, and testified that he was well acquainted with its method of paying its employes, and knew that this "scrip" was issued only as a means of granting employes credit at the store of plaintiff in error.

For the reasons stated herein, we conclude that the trial court committed error in finding for defendants in error, and his judgment will be reversed and the suit dismissed.