## Barker v. Stearns Coal & Lumber Co., Inc.

March 4, 1941.

As Extended on Rehearing June 20, 1941.

342

Kennedy & Kennedy for appellant.

H. C. Gillis for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The trial court sustained a general demurrer to and dismissed the petition as amended of C. M. Barker, doing business as the Citizens Milling Company, seeking to recover judgment for $18,000 and interest of the Stearns Coal & Lumber Company.

The facts alleged are in substance: The appellee is engaged in the mining of coal and in connection therewith operates a wholesale and several retail merchandise stores. For several years it has been issuing to its employees metal discs bearing figures indicating various denominations from one cent up to $5. They also have stamped on them the name of the company and the words, "Payable in merchandise only" and "Not transferable." Appellant accepted and holds $18,000 of this scrip from various merchants in payment of his products sold them, they having accepted it for merchandise. On May 15, 1939, one of appellee's regular pay days, the appellant tendered the $18,000 in scrip to appellee and demanded cash therefor but it refused to redeem any of the scrip in cash. It was further alleged, in substance, that during the whole of the time appellee has been issuing the scrip it has been circulating in McCreary and adjoining counties as a medium of

monetary exchange and that various persons have been acquiring and using the scrip in the general course of their business; that it was a universal and well-known custom to regard title to the scrip as having passed by delivery only; and that the appellee has been redeeming the scrip from its employees and from all other persons acquiring and presenting it for redemption. All of this, it is alleged, was with the knowledge and consent of the appellee.

We may accept appellee's description of the characteristics of its scrip to be:

"(1) It is a medium of credit, issued only to employees at their own request, in payment of labor performed or to be performed; (2) It is not transferable; (3) It is redeemable in merchandise only by the employees to whom it is issued; (4) Any unused scrip may be redeemed by payment in cash to the employees to whom it was issued on a regular pay day. No one but such employees is entitled to enforce redemption in cash."

If the scrip is non-transferable under valid law, as it purports to be on its face, it is apparent that appellant stated no cause of action against appellee unless on the ground of estoppel. The scrip was issued pursuant to Section 4758b-2 of the Kentucky Statutes, an act of 1932. That section provides in substance that any employer may, upon the request of any employee, "issue, sell, give or deliver" to such employee as "a medium of credit, in payment for labor performed or to be performed, non-transferable scrip, tokens, drafts, orders or coupons, payable and redeemable in merchandise only by the employee to whom issued." There is a proviso that such scrip or instruments "shall be construed, taken and held in all courts and places to be a promise to pay * * * to the employee to whom issued, in lawful money of the United State or check, upon demand and surrender by said employee of such scrip or any unused portion thereof, at such regular settlement day or pay day when the same would have been due in cash had not the said order, scrip or token been issued." Criminal penalties are prescribed for the refusal of the employer "to pay the employee to whom is issued such non-transferable scrip" on a regular pay day.

By the terms of this statute the appellee was plainly

authorized to issue the non-transferable scrip described. Appellant contends that this statute is unconstitutional because it violates Section 244 of the Constitution in so far as it authorizes the giving of non-transferable scrip. That section of the Constitution provides:

"All wage-earners in this state employed in factories, mines, workshops or by corporations shall be paid for their labor in lawful money. The general assembly shall prescribe adequate penalties for violations of this section."

The protection of wage earners to whom compulsion of need requires advancement of wages before regular pay day has presented a vexing legislative problem for many years. There sometimes appears a collision between the protection of individual civil rights, such as the liberty to contract, and the general welfare of the entire social body involving the protection of the weak against the oppression of the strong. The power of the State to prescribe the time of payment, to establish restrictions and otherwise regulate the contractual relationship in this particular has progressively grown or, to speak more accurately, been recognized and exercised. Cooley on Constitutional Limitations, page 748, Note 1; page 1329, Note 6; 31 Am. Jur., Labor, Section 495, et seq.; Cf. Commonwealth v. Reinecke Coal Company, 117 Ky. 885, 79 S. W. 287, 25 Ky. Law Rep. 2027.

Concerning the medium of payment of wages, it is said in 31 Am. Jur., Labor, Section 515:

"As early as the fourteenth century, laws in England prohibited the payment of wages in certain trades, in anything but lawful money of the realm; and in 1831 all of these laws were consolidated into what is known as the Truck Act, embracing nearly all classes of trades. The purpose of this legislation was the abolition of what was known in that country as the 'Truck System,' that is to say, the payment of wages to laborers in goods or by truck.

"Similar legislation has been enacted from time to time in America. The United States Supreme Court has held that such statutes do not infringe the freedom to contract guaranteed by the Fourteenth Amendment to the Federal Constitution."

The foregoing section of the Kentucky Constitution

is clear and explicit as to the medium of payment, but is not so as to advancements or extension of credit based upon wages earned and unearned. However, the test of a statute ought not to be by a meticulous adherence to the letter of the Constitution when it is in conflict with the spirit or intent.

It is a familiar aid in the interpretation of a provision of a constitution to examine the proceedings of the convention. If they clearly reveal the purpose of the particular provision the debates will be accepted as an indication of the meaning; subject to the qualification, however, that if the words used naturally convey a different meaning, the language of the instrument controls, regardless of the purpose disclosed in the debates, since the Constitution obtains its force from the people who adopted it and not from the convention which drafted and proposed it. The proceedings of the Convention of 1890, which framed the present organic law of the State, contains much discussion of the provision which became Section 244. The committee which considered it heard many interested citizens. One member of the Convention related the conditions found by a committee of the legislature, of which he had been a member, which had gone to different parts of the state where there was mining industry and inquired into the situation. Imposition by employers upon miners through the use of scrip was quite prevalent. There was practically unanimity of purpose to protect wage earners from such oppression. But the debates reflect a difference of opinion as to how the wage earners might be best protected without restricting basic rights of free men. The requirement that wages should be paid in money was accepted as being necessary to break up the prevailing system of giving tokens, scrip or orders payable only in merchandise at the store or commissary of the employer, which, it is said, had resulted in a species of serfdom. Basically, the condition resulted from the fact that those tokens were not transferable and could not be used at other than the employers' merchandise stores. On the other side was the matter of convenience of the laborer in having credit and of the simplification of bookkeeping and prevention of mistakes. It is significant that the Convention rejected amendments adding such qualifications as would expressly permit agreements to give and accept something other than money or the deduction of

"legal and equitable off-sets, or orders agreed upon between the parties." The thought was expressed that scrip or tokens would not offend the purpose of the provision if they were transferable and if the holder was assured that they would be paid in money at the end of the month. Debates, Constitutional Convention, pages 4689, 4807, 4867-4888, 5337-5345. If Section 244 of the Constitution is paternalistic or infringes upon the liberty of contract elsewhere vouchsafed in the Bill of Rights, it is not to be overlooked that the people deemed it better that it should be that way.

To make that constitutional provision operative as therein mandatorily required and to prohibit the evils it was intended to destroy, the legislature early enacted a statute embodying the language of the section and fixing substantial criminal penalties for its violation. Section 1350, Kentucky Statutes. Not long afterward it enacted a law specifically applicable to industries employing ten or more persons in mining which requires payment in money of the full amount of wages due employees on or before the 15th and 30th days of each month, and makes it a misdemeanor for such an employer "either directly or indirectly, to coerce or require any such servant or employee to deal with or purchase any article of food, clothing or merchandise of any kind whatever, from any person, association, corporation or company, or at any place or store whatever." It is further provided that such employer shall not "exclude from work, or  *  *  *  punish or blacklist any of said employees for failure to deal with any other or to purchase any article of food, clothing or merchandise whatever from any other or at any place or store whatever." Section 2738r-1 et seq. Statutes. See also Section 576a-1, Statutes. Although partaking of special legislation, inhibited by Section 59 of the Constitution, Section 2738r-1 has been held valid as "consistent with the end sought to be accomplished" by Section 244, the court saying in Commonwealth v. Hillside Coal Company, 109 Ky. 47, 58 S. W. 441, 442, 22 Ky. Law Rep. 559:

"The abuse sought to be corrected was the imposition practised on the miners by the operation of mines by forcing them, directly or indirectly, into dealing with the 'company stores,' where goods at exorbitant prices were paid for wages instead of money."

The interpretation of these statutes and of related contracts has consistently been with the court's mind upon the meaning and purpose of Section 244 of the Constitution. Thus in Hudnall v. Watts Steel & Iron Company, 49 S. W. 21, 20 Ky. Law Rep. 1211, there was before us a contract between a merchant and an employer of labor whereby the employer agreed to accept all orders drawn on it by its employees between pay days and given the merchant for merchandise, and to pay him the gross sum at the end of each month. It was further agreed that the employer should furnish the merchant information regarding the amounts its employees had earned and try to influence them to give the merchant their trade. We regarded the contract as being an arrangement by which the wages would be paid not in money but in goods. It was believed that such agreements would in the end lead to a division of profit on the goods between the employer and the merchant and that that was the mischief which Section 244 of the Constitution intended to prevent; hence, that the contract was not enforcible. It was pointed out on authority of Crawford v. Wick, 18 Ohio St. 190, 98 Am. Dec. 103, that even without such a constitutional provision a contract of that character would be contrary to public policy.

We abridge the agreed statement of facts in Kentucky Coal Mining Company v. Mattingly, 133 Ky. 526, 118 S. W. 350, 352. The company issued to its employees metal discs or scrip bearing numerals in payment of wages earned but not due or earned at the time of delivery. These discs were redeemable on pay day but at a discount; e. g., those marked "100" were good for 90 cents; those marked "10" were good for 9 cents. Laborers were charged full value, that is, for coin marked "100" he was charged with $1, but it was redeemed for only 90 cents. The company had arrangements with several merchants to redeem such coins at the agreed discount value for which it redeemed the same from the miners. The plaintiff in that suit had no such agreement and had purchased some of the scrip from a merchant who did have it. The company declined to pay the scrip except at the discount. We declared the law would not sanction or enforce such a contract by which an employer loaned its credit to its employees until the next pay day in consideration of a 10 percent deduction. Construing Section 244 of the Constitution, it was said:

"Under this section the defendant may lawfully issue checks to its miners to show what it owes them, but these checks must at the next bimonthly pay day be paid at their face value; otherwise, the miners will not be paid for their labor in lawful money, but will be scaled one-tenth of their earnings because a check was issued to them."

The facts in Pond Creek Coal Company v. Riley Lester & Brothers, 171 Ky. 811, 188 S. W. 907, 910, were that a mercantile company, formed by a coal mining company and having identical stockholders and operating several stores in the vicinity of the mines, issued to the miners non-transferable coupon books with certificates payable in merchandise only at the store which issued the same. Competing merchants purchased some of these coupon books for value from the mine employees. The mining company refused to redeem same in cash although it offered to do so in merchandise at the stores. The coupon books were not negotiable instruments, for reasons stated in the opinion, but were choses in action. We held that notwithstanding their terms they were assignable under the terms and intent of the current law (Sections 1350 and 2738r-1 of the Statutes), saying:

"If the laborer had the right to demand and receive cash for these books, or unused portions thereof, he also had the right to transfer to his assignee that which he possessed. To deny him this privilege of so transferring this right, although the books are endeavored to be made non-transferable, would enable the employer by this stipulation to set aside altogether the provisions of the law, and thereby set at naught the commendable purpose of the law maker in enacting it. Such a consequence cannot meet with our approval. Moreover, the wage-earner is entitled to be paid in lawful money, and the wages earned by him constitute property which he is entitled to deal with as he pleases, including a sale or transfer thereof, and it is incompetent for the employer to abridge this right in the manner attempted by the issuing of the books sued on."

The opinion distinguishes the case of Avent Beattyville Coal Company v. Commonwealth, 96 Ky. 218,

28 S. W. 502, 16 Ky. Law Rep. 414, 28 L. R. A. 273, and attention to it need not be given here.

In Hoskins Grocery Company v. Creech Coal Company, 247 Ky. 8, 56 S. W. (2d) 555, we reaffirmed the constitutionality of Section 4758b-1 of the Statutes, an Act of 1924 (Chapter 71), which provides inter alia that scrip or other evidences of debt for labor shall be redeemed in cash or legal tender at face value at least once in each month on a regular pay day by anyone who may present the same; and, further, that if such scrip had been exchanged for cash and not for merchandise the holder is entitled to recover of the employer issuing the same whatever sum he paid for it, plus interest from date of payment. Under that act we held a purchaser of metal scrip, like that involved in the case at bar, from persons who had acquired it from the laborers to whom it had been issued as evidences of indebtedness for wages, was entitled to recover judgment against the employer, the holder having properly presented the same for redemption and payment in accordance with the statute.

In Carrs Fork Coal Company v. Johnson Drug Company, 249 Ky. 371, 60 S. W. (2d) 952, 954, we said:

"This scrip or token is regarded by the statute as evidence of an advancement of wages, is transferable, and must be paid in lawful money, else its issue could not be allowed. Avent Beattyville Coal Company v. Commonwealth, 96 Ky. 218, 28 S. W. 502, 16 Ky. Law Rep. 414, 28 L. R. A. 273; Pond Creek Coal Company v. Riley Lester & Brothers, 171 Ky. 811, 188 S. W. 907; Western Kentucky Coal Company v. Nall & Bailey, 228 Ky. 76, 14 S. W. (2d) 400. When that time comes and demand is made, the contractual obligation becomes one between the employer and the holder of the scrip as the legal assignee of the right to collect the wages."

As pointed out in Elkhorn Piney Coal Mining Company v. Elvove, 237 Ky. 570, 36 S. W. (2d) 3, Section 4758b-1 of the Statutes (Act of 1924) makes scrip transferable by delivery.

It is recognized that the foregoing cases, and others not referred to, were decided under that statute

or under others which contained neither an express prohibition against nor permission for the giving of transferable scrip. But they form a background of constitutional interpretation. Subsequently, in 1932, by enacting Section 4758b-2, Statutes, the legislature made a clear departure not only from previous enactments but from the judicial declaration of public policy based upon Section 244 of the Constitution. As above stated, this statute expressly authorizes the giving of non-transferable scrip as evidence of an advancement of wages and the scrip involved in this case was issued under that statute. The act declared the repeal of all inconsistent laws and obviously intended to eliminate that part of the 1924 act which requires that scrip shall be transferable.

We may readily agree that ordinarily the legislature may declare non-negotiable or non-assignable any particular instrument representing a promise to pay money. However, if it represents wages owing a laborer for work done, then legislative authority is subject to the restriction of Section 244 of the Constitution. We do not construe the Constitution as prohibiting the extension of credit based upon wages either earned or unearned, or the giving of some token as evidence thereof, but as declaring that whatever is given for wages earned shall be redeemable and payable in cash without restriction or condition. To that end such token or scrip must be freely assignable or transferable to a third party; otherwise, the payment of wages would not be in cash. If during the course of the working period before pay day the employer desires to give scrip, tokens or orders as representing an advancement of wages earned but not then due to be paid according to the statutes or custom of the employer, such token or evidence must be of a character that is assignable so that a bona fide assignee or holder may be assured of its redemption in cash and may obtain lawful money for it on the employer's customary pay day. No attempt by an employer to prevent that or of the legislature to authorize it can be sanctioned. Hence, Section 4758b-2 of the Statutes insofar as it authorizes the issuance, sale, gift or delivery to wage earners employed in factories, mines, workshops, or by corporations for their labor of scrip or any other instrument which is non-assignable or non-transferable and is re-

deemable only in merchandise or something other than lawful money, is clearly unconstitutional and void when it represents or is evidence of wages earned.

The extension of credit by an employer to an employee, based upon anticipated service and contingent security, can hardly be regarded as the payment of wages within the constitutional requirement. That is a matter of contract between the parties which is not controlled by Section 244 of the Constitution.

The appellee relies upon decisions of the Tennessee courts construing a statute of that state relating to the redemption of scrip or other evidence of indebtedness. Chapter 31, Section 6710, et seq., Tennessee Code. Section 6712 of those statutes expressly declares: "Nothing in this chapter is to be so construed as to legalize the issuance or use of scrip." Section 6710 seems to go no farther than to require that an employee "using coupons, scrip, punch-outs, store orders, or other evidences of indebtedness to pay their or its laborers and employees, for labor or otherwise," shall, if demanded, redeem the same in the hands of its laborers, or a bona fide holder, in money, at face value upon presentation, at a regular pay day or at any time not less than 30 days from issuance or delivery of the same. Section 6710 authorizes an action for the recovery of the value of the scrip or other "evidences of indebtedness," and if the plaintiff shall be successful he is entitled to penalties of 25% of the value and an attorney's fee. The statute has been held constitutional. Harbison v. Knoxville Iron Company, 103 Tenn. 421, 53 S. W. 955, 56 L. R. A. 316, 76 Am. St. Rep. 682; Knoxville Iron Company v. Harbison, 183 U. S. 13, 22 S. Ct. 1, 46 L. Ed. 55.

In Cambria Coal Company v. Cooper, 165 Tenn. 269, 54 S. W. (2d) 708, the Supreme Court of Tennessee construed the statute as not prohibiting an employer advancing to an employee money or merchandise to be deducted from his wages when they shall become due, and held that metal scrip marked redeemable "In Trade Only" may be used to evidence such advances. The opinion points out that the employer in that case never issued scrip in payment of wages but only as a means of extending credit at the company's store until payment was due and that it was not issued except to

those who were considered good credit risks whether they had then earned their wages or not. The court notes the marked distinction between paying an employee wages in scrip and advancing to him money or merchandise to be deducted from his wages when due. Since the scrip involved in the case had not been issued for wages but only as an evidence of credit, the company was not required to redeem the same in money.

In the later case of Hensley v. Tennessee Consolidated Coal Company, 18 Tenn. App. 520, 79 S. W. (2d) 805, 806, one of the Courts of Appeal of that state pointed out that difference between scrip issued between pay days for wages earned for services rendered and scrip issued when the recipient had no credit for wages which, it is said, would be issued "purely upon the personal credit, but manifestly with the expectation that the recipient would thereafter earn wages equal in amount to the scrip, so that a deduction could be made." It was held that an independent merchant who had acquired scrip for goods sold employees was entitled to "recover from the coal company the face value of the scrip, together with the stipulated penalties for failure to redeem the same in money where the coal company failed to show that the scrip was not issued in payment of wages due.

In Henley v. Tennessee Consolidated Coal Company, 21 Tenn. App. 598, 113 S. W. (2d) 1199, the court adhered to the ruling in the case, supra, between the same parties. Certiorari was denied by the Supreme Court of Tennessee. It was held in that opinion that where scrip is in the hands of a bona fide holder, it is presumed that it was issued prior to the regular pay day in payment of wages earned, but this presumption may be rebutted.

There is no provision in the Constitution of Tennessee similar to or having the effect of Section 244 of the Constitution of Kentucky requiring payment of wages in money, and this fact must be regarded in considering the Tennessee statute and judicial decisions. However, the statute of that state seems to reach the same end that our constitutional provision achieves, and we think the distinction drawn by the Tennessee courts between scrip issued as an advance payment of wages earned and scrip issued merely as a convenient way of authorizing credit is sound. We, therefore, are

of opinion that the Act of 1932 (Section 4758b-2, Ky. Statutes) would be valid if it were confined to scrip or tokens issued only as an extension of credit based upon an anticipated counter obligation or unearned wages or anything other than wages earned.

The act is obviously not severable on its face. The question then arises whether the court should declare the act unconstitutional in its entirety or hold it to be valid but subject to the construction that it can apply only to scrip issued for unearned wages.

It is a general doctrine that, within limits, the courts may uphold a statute not reasonably severable in its parts by restricting its application to a legitimate field of legislation or by construing an ambiguity so as to bring the statute within constitutional powers. 11 Am. Jur., Constitutional Law, Section 100. Courts are authorized to insert words or phrases into an act of legislation by construction only when it is necessary in order to rescue the enactment from absurdity or to effectuate a purpose made obvious by other portions. Barron v. Kaufman, 131 Ky. 642, 115 S. W. 787; Grieb v. National Bond & Investment Company, 264 Ky. 289, 94 S. W. (2d) 612. To interpolate the limitation or construction we have stated in the statute or to strike out the phrase "for labor performed" would be a judicial amendment and clearly beyond our powers. 11 Am. Jur., Constitutional Law, 160; Ballard v. Mississippi Cotton Oil Company, 81 Miss. 507, 34 So. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476. The clear intention of the legislature being to authorize the issuance of scrip for both earned and unearned wages, we cannot say that it would have enacted the statute limited in the respect we have stated. Therefore, the act in its entirety must be and is held unconstitutional and inoperative.

In proceeding to the decision, we have not overlooked appellee's contention that appellant should not be heard because of the rule that one may not question the constitutionality of a statute unless its enforcement is against him or violates his constitutional rights, and that Section 244 of the Constitution was adopted exclusively for the benefit of the laborers themselves. We do not agree. The right of appellant arises out of the rights of the laborers who transferred the scrip first to local merchants, who then transferred it to the appel-

lant. He stands in place of the laborers and if the restrictive terms of the scrip are non-effective (as we hold), then appellant is to be deemed an assignee of a chose in action, with the authority to maintain suit thereon. The case of Hackney v. Fordson Coal Company, 230 Ky. 362, 19 S. W. (2d) 989, is distinguishable. We held there that a merchant competing with a mining company's commissary could not maintain an action for damages against the company because of its order prohibiting its employees, on penalty of discharge, from passing scrip to an outsider, in apparent violation of the terms of Section 2738s-1 of the Statutes. That statute prohibits an employer from coercing or requiring his employees to deal with or purchase merchandise from any particular person, association, corporation or company or at any particular place or store. It is to be observed that Section 4758b-1 of the Statutes (the Act of 1924) provides for an action by the buyer of scrip without making the persons from whom it was acquired parties. Western Kentucky Coal Company v. Nall & Bailey, 228 Ky 76, 14 S. W. (2d) 400; Elkhorn Piney Coal Mining Company v. Elvove, 237 Ky. 570, 36 S. W. (2d) 3.

Although that Act requires the keeping and furnishing of a record of the persons from whom scrip is acquired and the amount paid therefor to be presented to the company issuing the scrip, it is not made a condition precedent to an action thereof, and the defense is one that should be pleaded. The presentation of the record may be waived. Cf. Elkhorn-Piney Coal Mining Company v. Elvove, supra; Hoskins Grocery Company v. Creech Coal Company, 247 Ky. 8, 56 S. W. (2d) 555. And, as has been held in Henley v. Tennessee Consolidated Coal Company, 21 Tenn. App. 598, 113 S. W. 2d 1199, it is presumed that scrip issued to employees was for wages earned for services rendered; hence, the scrip sued on was transferable and is redeemable in cash, the terms stamped thereon to the contrary notwithstanding.

We, therefore, conclude that the petition stated a cause of action and the demurrer thereto should have been overruled.

Judgment reversed.

Whole court sitting.

Judges THOMAS, RATLIFF and TILFORD, dissent, being of opinion that Section 244 of the Constitution, requiring that the payment of wages shall be in lawful money, means payment at any time whether it be of earned or unearned wages, partially or entirely, and that whatever is given for or as a representation of wages must be redeemable and payable in cash without restriction or condition.